STATE of Minnesota,
Petitioner, Appellant,

v.

Andrew Joseph FORCIER, Respondent.

No. C5–87–468.

Supreme Court of Minnesota.

March 18, 1988.

·Rehearing Denied April 14, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul P. Kempainen, Asst. Atty. Gen., St. Paul, Michael Junge, McLeod Co. Atty., Glencoe, for appellant.

C. Paul Jones, State Public Defender, Elizabeth Davis, Minneapolis, for respondent.

AMDAHL, Chief Justice.

The main questions in this criminal appeal are whether any error in admitting defendant's exculpatory statement during the state's case-in-chief is subject to harmless error analysis and, if so, whether the error was indeed harmless. Answering both questions affirmatively, we reverse the decision of the court of appeals and reinstate the judgment of conviction.

Defendant, age 21, and the complainant, age 23, are two young men who, during their adolescent years, were victims of sexual abuse by complainant's father. Defendant, however, in addition to being a victim, was also a victimizer. He was larger and more physical than complainant and sometimes sexually abused complainant.

In early 1986 complainant's father was successfully prosecuted and sent to prison. Meanwhile, with the help of social workers and counselors, complainant—who had an IQ of only 77 when he was last tested—moved into an apartment of his own and supported himself by working in service jobs.

The incident with which we are concerned occurred on April 23, 1986. Com-

plainant testified that on that day defendant came to his downtown apartment and forced complainant to commit an act of fellatio, then forced him to submit to anal intercourse, ejaculating onto his back. Complainant testified that when defendant was in the bathroom wiping himself off with a washcloth, he dressed and went to the next door neighbor and sought help. This neighbor testified that complainant, who was visibly very upset, told her that there was a man in his apartment who would not leave. The neighbor testified that when she suggested that complainant call the police, the man appeared at the door, said he was leaving and left. Complainant then went to the fast-food restaurant where he was working and told the manager that someone had entered his apartment without permission, had "had some fun" with him and had stolen money from him. The manager told complainant to go to the police. Complainant did this immediately. The police talked with him, took him to the doctor, and also seized the washcloth. (A BCA analysis of a swabbing of complainant's lumbar area and an analysis of the washcloth showed the presence of sperm on both, thereby corroborating complainant's statement to the police and his subsequent trial testimony.)

Shortly after questioning complainant, the police got defendant out of his class at a vocational school and, according to them, got defendant to voluntarily agree to accompany them to the police station to answer questions. Once at the station they gave defendant a *Miranda* warning, and defendant made a statement in which he said that complainant had offered him a "blow job" and he had taken it. He denied the claim of anal intercourse. He admitted

taking $23 from complainant but said that it was money that complainant owed him. Defendant, who had a prior conviction of burglary, did not testify at the trial.

There were two charges against defendant: one based on defendant's sexually penetrating someone who was mentally handicapped, the other based on his forcibly penetrating someone. The trial court dismissed the first charge notwithstanding evidence that complainant is a retarded person who basically took only special education classes when he was in school. The jury found defendant guilty of the charge of forcible rape.

The court of appeals held that one of the police officers erred in stating nonresponsively in his testimony that he did not believe defendant's statement to the police. *State v. Forcier*, 415 N.W.2d 912, 915 (Minn.App.1987). It said that the error would not ordinarily require a new trial but that coupled with other error it did require a new trial. *Id.* We conclude that the error was cured by the trial court's immediately ordering the statement stricken and by the trial court's instructing the jury not to consider any stricken evidence.[1] We also conclude, in any event, that the error was nonprejudicial.

The court of appeals also held, more significantly, that the trial court erred in admitting the statement defendant made to the police and that the error required a new trial. 415 N.W.2d at 914–15. In admitting the statement the trial court concluded (a) that a *Miranda* warning was necessary because the interrogation of defendant was "custodial" in nature and (b) that the police fully complied with *Miranda*. The issue of whether the interrogation was "custodial"

---

1. As Justice Scalia stated for himself and five other justices recently in *Richardson v. Marsh*, — U.S. —, 107 S.Ct. 1702, 1707, 95 L.Ed.2d 176 (1987), "the almost invariable assumption of the law [is] that jurors follow their instructions." The presumption that jurors follow their instructions "is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the in-

terests of the state and the defendant in the criminal justice process." 107 S.Ct. at 1709. For a discussion of the views on both sides of the issue, see 1 J. Weinstein & M. Berger, Weinstein's Evidence—United States Rules § 105[05] at 105–45 to 105–47 (1986) (arguing that generally reliance on cautionary or limiting instructions is not misplaced if the instructions are given in a "forceful, concise and noncondescending manner").

in nature is not before us.[2] The omnibus hearing evidence bearing on whether the police complied with *Miranda* is as follows: (a) the police officer who advised defendant (outside the presence of the other officer) testified that defendant admitted he understood his rights and waived his right to silence and his right to counsel; (b) asked on cross-examination if defendant had asked to speak to Attorney Fran Eggert, the officer said first, "No, he did not," said later that he did not think defendant had mentioned Eggert's name, said later that he did not remember defendant mentioning Eggert's name, and said finally that it was always possible that defendant "could have" mentioned Eggert's name; and (c) defendant testified that he said he would talk with the officer but asked the officer if he could talk with Eggert beforehand, that the officer replied that Eggert's name was not on the list of public defenders, and that the officer then proceeded to question him.

Although the trial court did not make any findings, the court of appeals treated the trial court's decision admitting defendant's statement as implying that the trial court found that defendant had not asked to talk with Eggert before he spoke with the officer. 415 N.W.2d at 914. The court of appeals ruled that this implied finding was "clearly erroneous." *Id.* It ruled further that by asking to speak with Eggert, defendant sufficiently invoked his right to counsel under *Miranda*[3] and further questioning by the officer was prohibited.[4]

■ Since the state had the burden of proof on the issue of whether *Miranda*

was complied with, and since the officer finally admitted on cross-examination that it was possible that defendant asked to speak to counsel, the court of appeals' decision that the trial court erred in admitting defendant's statement is sustainable.

However, we disagree with the court of appeals' conclusion that the admission of the statement necessitates granting defendant a new trial. The court of appeals' opinion says that a violation of a defendant's right to counsel is a "very serious breach of individual freedom" and that "[r]ecognizing the supreme importance of the right to counsel, we hold that the admission of appellant's statements, made following his assertion of the right to counsel, so substantially impairs his right to a fair trial that only a new trial will rectify this situation." 415 N.W.2d at 914–15. We are not sure that the court of appeals meant that the error in admitting the statement is per se prejudicial, but we tend to think that the court did mean that. It also appears that the court confused the Fifth Amendment right to counsel under *Miranda* with the Sixth Amendment right to counsel.[5] In any event, the opinion does not expressly recognize that an error of the sort that was made in this case can be harmless error, and the opinion does not analyze the evidence to demonstrate that the error was prejudicial.

■ That the court of appeals should have gone through a harmless error analysis is clear from our cases. *See, e.g., State v. Herem,* 384 N.W.2d 880, 884 (Minn.1986)

2. Without findings by the trial court resolving the disputed facts bearing on this issue, we cannot determine whether or not the trial court erred in ruling that the interrogation was "custodial" in nature. The testimony of the police officers arguably would have supported a determination that the interrogation was not custodial in nature. *Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

3. Cases bearing on invocation of the right to counsel under *Miranda* include *Connecticut v. Barrett,* —— U.S. ——, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987); *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986); *Smith v.*

*Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984).

4. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

5. Cases dealing with harmlessness of violations of the Sixth Amendment right to counsel include: *Burger v. Kemp,* —— U.S. ——, 107 S.Ct. 3114, 3120, 97 L.Ed.2d 638 (1987); *Strickland v. Washington,* 466 U.S. 668, 691–96, 104 S.Ct. 2052, 2066–69, 80 L.Ed.2d 674 (1984); *Rushen v. Spain,* 464 U.S. 114, 117–21, 104 S.Ct. 453, 454–57, 78 L.Ed.2d 267 (1983).

(stating that "not all errors in admitting illegally obtained confessions or statements justify overturning a conviction and granting a new trial" and holding that the record provided by the defendant on appeal did not establish that any error was prejudicial); *State v. Olson,* 326 N.W.2d 661, 663 (Minn.1982) (avoiding deciding whether statement was obtained in violation of *Miranda* because it was clear that any error in admitting the defendant's statement was nonprejudicial); *State v. Howard,* 324 N.W.2d 216, 221–23 (Minn.1982), *cert. denied* 459 U.S. 1172, 103 S.Ct. 818, 74 L.Ed. 2d 1016 (1983) (assuming, arguendo, that police violated *Miranda* by initiating conversation with defendant after he invoked his right to counsel, any error in admitting the defendant's statement was harmless error; error must not be considered in isolation but in the context of the facts of the case to determine its impact on the jury; concluding that in the face of the overwhelming evidence of guilt, the statement was a minor addition to the state's case and did not play a significant role in persuading the jury to convict).

■ Our harmless error analysis in this case starts with the fact that the evidence of defendant's guilt was strong: complainant promptly sought help from his neighbor, who saw a man leave complainant's apartment; complainant promptly reported the matter to his boss and then to the police; complainant's complaint was corroborated by medical evidence. Defendant's defense, on the other hand, was nonexistent: he called no witnesses and did not himself testify; his attorney simply argued that the state did not prove that any penetration that occurred was nonconsensual. The fact that the statement was intended by defendant to be exculpatory does not by itself mean that any error in admitting it was harmless. Indeed, one can argue that admission of the statement may have

helped the jury in some way to conclude that complainant was telling the truth because (a) the scientific evidence conflicted with defendant's claim in the statement that only oral penetration, not anal penetration, occurred, and (b) the knowledge that defendant apparently had lied in saying that only oral penetration occurred conceivably increased the likelihood that the jury would conclude that defendant had lied in his claim of consent. However, if the statement had not been admitted during the state's case-in-chief, the state's case still would have been strong and the defendant's case presumably still would have been nonexistent (because defendant could not have taken the stand and testified inconsistently with the statement to the police without the statement being admitted as impeachment evidence [6]). Under all the circumstances, we are satisfied beyond a reasonable doubt that the admission of the statement did not have a *substantial or significant* impact on the verdict, as by persuading the jury to reach a different verdict than it otherwise would have reached. *State v. Howard,* 324 N.W.2d 216, 221–23 (Minn.1982), *cert. denied* 459 U.S. 1172, 103 S.Ct. 818, 74 L.Ed.2d 1016 (1982).

Reversed and judgment of conviction reinstated.

---

**6.** *Oregon v. Hass,* 420 U.S. 714, 722–24, 95 S.Ct. 1215, 1220–22, 43 L.Ed.2d 570 (1975); *Harris v. New York,* 401 U.S. 222, 224–26, 91 S.Ct. 643, 645–46, 28 L.Ed.2d 1 (1971). Defendant's prior conviction also would have been admissible for impeachment purposes pursuant to Minn.R. Evid. 609.