STATE of South Dakota, Plaintiff
and Appellee,

v.

Shawn SCHUSTER, Defendant
and Appellant.

No. 17855.

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1993.

Decided June 23, 1993.

Mark Barnett, Atty. Gen. and Scott Bogue, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Leah C. Piersol, Deadwood, for defendant and appellant.

AMUNDSON, Justice.

Shawn Schuster (Schuster) appeals from his conviction of felony rape as defined in SDCL 22–22–1(2).[1] We affirm.

## FACTS

On Friday, May 10, 1991, twenty-three year old Schuster drove sixteen-year old D.T., her boyfriend Brian Meyers (Meyers), and Norman Schnitger (Schnitger) to a party at Orman Dam. Although D.T. was sixteen years old, the evidence showed her to have the mental capacity of only an eight or nine year old.

At some point in the evening, Schuster and D.T. left the party and moved to another location along the shore of the reservoir. Next, Schuster removed D.T.'s shorts and underwear and sexually penetrated her mouth and vagina. While Schuster alleged that the penetration occurred with D.T.'s consent, D.T. testified that the penetration was against her will. Schuster then abandoned D.T. near the dam without her shorts, underwear, and one of her tennis shoes.

Brad Bechen (Bechen), who was fishing near the dam, subsequently discovered D.T. half-naked and trembling in the brush along the shoreline. D.T. was visibly upset and stated that she had been raped. Bechen placed a blanket around D.T., talked to her for approximately one hour, and then transported her to the Belle Fourche Police Station where she reported being raped by Schuster.

Schuster was placed in protective custody by Belle Fourche Police Officer Curt Nulle (Nulle) in the early morning hours of May 11, 1991. Nulle advised Schuster of his *Miranda* rights at 3:32 a.m. prior to interrogating him. Nulle gave Schuster a second *Miranda* advisement at 4:24 a.m. when Schuster was placed under arrest for rape. Throughout the entire length of the interrogation by Nulle, Schuster asked for

and was denied an attorney on at least twelve occasions.

After his arrest, Schuster was transported to the hospital and placed in the custody of Deputy Sheriff Steven Evans (Evans). There Evans requested that Schuster give hair and clothing samples for a rape kit. Schuster claims that he first refused to give the samples without talking to an attorney, but changed his mind when Evans commented that he would get a court order and obtain the samples anyway. Evans testified that he did not recall Schuster requesting an attorney but that he did recall telling Schuster that he could probably obtain a court order to get the samples. After this exchange, Schuster signed a consent form and the samples were taken.

Later, Evans again gave Schuster a *Miranda* warning. Schuster indicated that he understood his *Miranda* rights and wished to waive them. Evans then began to question Schuster regarding the events of the prior evening. During this taped interview, Schuster stated that he had attempted vaginal intercourse with D.T., but failed because he could not get an erection; that he could not remember if he penetrated D.T. with his fingers; and, that D.T. had pulled down his pants and performed oral sex on him. This interview was preserved on tape.

On August 14, 1991, Schuster was indicted by the Butte County Grand Jury for rape in the first degree, SDCL 22–22–1(1), forcible rape, or in the alternative, rape in the first degree, SDCL 22–22–1(2), rape where the victim lacks mental capacity to give consent. Schuster plead not guilty to all charges.

Trial before a jury commenced on December 4, 1991. The jury returned a verdict of not guilty as to rape in the first degree, SDCL 22–22–1(1), and guilty as to the alternative charge, rape in the first degree, SDCL 22–22–1(2). Schuster appeals his conviction.

---

**1.** At the time of Schuster's conviction, SDCL 22–22–1(2) was defined as rape in the first degree, where the victim is incapable of giving consent. The 1991 Legislature renumbered SDCL 22–22–1(2) as SDCL 22–22–1(3) and redefined it as

rape in the second degree effective as of July 1, 1991. For the purposes of this opinion, the crime will be referred to as SDCL 22–22–1(2), as it existed at the time of Schuster's conviction.

## ISSUES

1. Whether the trial court erred by refusing to give defendant's proposed jury instructions regarding defendant's subjective understanding of the victim's ability to give consent?

2. Whether the trial court erred in refusing to suppress bodily samples taken from defendant?

3. Whether the trial court erred in admitting the defendant's statement made during his second interrogation?

## ANALYSIS

### 1. Jury Instructions

Schuster first alleges that the trial court erred in refusing to give two proposed jury instructions regarding his knowledge or understanding of D.T.'s ability to give consent to sexual intercourse. Schuster alleges that such error occurred through the court's refusal to give two different instructions proposed by Schuster: (1) an instruction pertaining to the definition of legal consent and (2) an instruction on mistake of fact. Schuster maintains that he should not be found guilty under SDCL 22–22–1(2) unless the jury concludes that he knew D.T. lacked the ability to consent to sexual intercourse.

"Jury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient." *State v. Johnston*, 478 N.W.2d 281, 283 (S.D.1991). Jury Instruction 11 listed the elements necessary for a rape under SDCL 22–22–1(2) as: "1. That the defendant at the time and place alleged in the Indictment accomplished an act of sexual penetration with [D.T.]; and 2. That [D.T.] was incapable, because of mental incapacity, of giving consent to such act of sexual penetration." This language mirrors the language of SDCL 22–22–1(2).

Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:

\* \* \* \* \* \*

(2) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act[.]

SDCL 22–22–1(2) (1990).

Schuster argues that Jury Instruction 11 was erroneous in failing to include as an element his knowledge or understanding of D.T.'s inability to give consent. However, the perpetrator's knowledge of the victim's incapacity is not listed as an element in the rape statute itself. SDCL 22–22–1(2). Absent a clearly expressed legislative intent to the contrary, the statute's language must be considered conclusive. *State v. Galati*, 365 N.W.2d 575, 577 (S.D.1985) (citing *Consumer Product Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980)). "Courts may not interpret or construe a statute in a manner inconsistent with the plain language employed by the legislature." *Galati*, 365 N.W.2d at 577.

The statute is clear on its face. A person is guilty of rape where the actor accomplishes sexual penetration with a person who is physically or mentally incapable of consenting to such act. SDCL 22–22–1(2). The section of the rape statute pertaining to persons incapable of consent makes no mention of, and thus does not require, knowledge on the part of the perpetrator. The precedent established by holdings of the court regarding SDCL 22–22–1(2) has made no reference to the knowledge of the perpetrator as an element of crime and has simply required evidence showing the victim incapable of giving consent. *See State v. Willis*, 370 N.W.2d 193 (S.D.1985); *State v. Fox*, 72 S.D. 119, 31 N.W.2d 451 (1948).

Iowa has a statute regarding the rape of persons who are incapable of consent which is similar to SDCL 22–22–1(2). The Iowa statute reads:

A person commits sexual abuse in the third degree when the person performs a sex act under any of the following circumstances:

\* \* \* \* \* \*

2. The act is between persons who are not at the time cohabiting as husband

and wife and if any of the following are true:

 a. The other participant is suffering from a mental defect or incapacity which precludes giving consent.

Iowa Code Ann. § 709.4(2)(a) (West Supp. 1992). In interpreting its statute, the Iowa Supreme Court compared rape of a person incapable of giving consent to rape of a person due to age status. *State v. Sullivan,* 298 N.W.2d 267, 273 (Iowa 1980). "This crime does not require knowledge or intent. As in the case of sexual abuse due to age status, the policies in support of protecting those who suffer mental incapacities outweigh the danger of mistake." *Id.* (citations omitted).

Likewise, the Washington Supreme Court has held that its statute regarding the rape of persons incapable of giving consent does not require the perpetrator's knowledge of the victim's incapacity. *State v. Meyer,* 37 Wash.2d 759, 226 P.2d 204, 207–08 (1951).

It was not necessary that respondent prove that appellants knew that the female was of such unsoundness of mind as to be incapable of consenting to the acts of sexual intercourse. There are certain types of statutory crimes in the commission of which the perpetrator acts at his peril. *If knowledge is not made a prerequisite by the statute defining the crime, its absence is not a defense, nor is it an element to be proved by the state.* The part of the statute pursuant to which the appellants were prosecuted does not make any reference to knowledge of mental condition. It has been decided under similar statutes that knowledge is not an element of the offense.

*Id.* (citations omitted) (emphasis added). Because the perpetrator's knowledge was not specifically required by the statute, the court refused to require it as an element of that type of rape. *Id.*

█ Our statute, SDCL 22–22–1(2), is similar to the statutes of Iowa and Washington. Accordingly, we find persuasive the holdings of those states that the perpetrator's knowledge is not an issue in the rape of a person incapable of giving consent. Rape of a person incapable of giving consent, SDCL 22–22–1(2), is analogous to the statutory rape of a person less than sixteen years old, SDCL 22–22–1(4), 22–22–1(5) (1990). We have held that the perpetrator's knowledge of the girl's age is immaterial and his reasonable belief that she was over the age of consent is not a defense in statutory rape cases. *State v. Fulks,* 83 S.D. 433, 436–37, 160 N.W.2d 418, 420 (1968). We similarly hold that Schuster's knowledge of D.T.'s inability to consent is not an element of rape under SDCL 22–22–1(2), nor may his lack of knowledge be asserted as a defense.

The trial court did not err in rejecting Schuster's instructions on his knowledge of D.T.'s inability to consent. SDCL 22–22–1(2) does not require proof of the perpetrator's knowledge of the victim's inability to consent. The trial court is thus affirmed.

### 2. Suppression of Bodily Samples

██ Schuster next alleges that the trial court erred in denying his motion in limine to suppress his bodily samples taken for a rape kit. However, this argument is moot. An argument is moot when the actual controversy has ceased and the only judgment which could be entered would be ineffectual for any purpose and would be an idle act concerning the rights involved in the action. *Aetna Life Ins. Co. v. Satterlee,* 475 N.W.2d 569, 572 (S.D.1991). There is no controversy regarding the bodily samples for the rape kit because they were never offered as evidence by the state at trial. In fact, the only mention of the bodily samples at trial was made by defense counsel. Because the evidence which was sought to be suppressed was never offered at trial, there is no error to address in this appeal.

### 3. Admission of Second Interview

Last, Schuster alleges that the trial court erred in admitting into evidence his interview with Evans. Based on the denial of his request for assistance of counsel during the initial Nulle interrogation, Schuster contends he did not voluntarily and intelli-

gently waive his rights prior to the Evans interview, making the interview inadmissible.[2]

The United States Supreme Court has established clear rules concerning *Miranda* rights. Waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment of that right. *Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378, 385 (1981). Whether the waiver of counsel was made knowingly and intelligently depends " 'upon the particular facts and circumstance surrounding that case, including the background, experience, and conduct of the accused.' " *Id.* (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938)). In this case, Schuster had repeatedly requested and been denied counsel while in custody and being interrogated by Nulle. Schuster also alleged that he requested and was denied counsel while he was at the hospital in the custody of Evans.

The United States Supreme Court has specifically examined the subsequent interrogation of an accused after the accused has requested counsel.

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1884–85, 68 L.Ed.2d at 386. Schuster clearly exercised his right to counsel by requesting counsel on at least twelve different occasions during the Nulle interrogation.

The fact that Schuster's second interview was conducted by a different law enforcement officer does not negate his request for counsel made during his initial interview with Nulle. Schuster's request for counsel during his interrogation by Nulle serves to terminate any interrogation of Schuster until he is either provided counsel or initiates further communication with the police. The United States Supreme Court has held that the *Edwards* rule applies "[w]hether a contemplated reinterrogation concerns the same or a different offense, or whether the same or different law enforcement authorities are involved in the second investigation[.]" *Arizona v. Roberson,* 486 U.S. 675, 687–88, 108 S.Ct. 2093, 2101, 100 L.Ed.2d 704, 717 (1988). Schuster had not been provided counsel as he had requested during his interrogation by Nulle, nor did Schuster initiate the subsequent interview with Evans. Schuster's interrogation by Evans thus fails to meet the standards established by *Edwards* and *Roberson* and was inadmissible as evidence at trial, since the waiver given to Evans cannot be construed as having been given knowingly or intelligently.

Since it was error to admit this evidence, State argues such admission is harmless error under this record on appeal. In order to find error harmless, it is necessary for the appellate court to find that the admission of the erroneous evidence did not prejudice the defendant's case. "Prejudicial error, when constitutional questions are being considered, is error which would have some likelihood of changing the result." *State v. Blue Thunder,* 466 N.W.2d 613, 618–19 (S.D.1991) (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). A constitutional violation may constitute harmless error, and thus not require reversal, if the court can declare beyond a reasonable doubt that the error was harmless and did not contribute to the verdict obtained. *State v. Michalek,* 407 N.W.2d 815, 819 (S.D.1987). We are

---

**2.** Schuster's interview with Nulle, unlike his interview with Evans, was held inadmissible at trial. The court denied admission of the Nulle interrogation because Schuster had requested and been denied counsel at least twelve times during the interview by Nulle.

thus required to ask whether it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty absent the admission of Schuster's statements to Evans. *See United States v. Hasting*, 461 U.S. 499, 510–511, 103 S.Ct. 1974, 1981, 76 L.Ed.2d 96, 107 (1983).

 State produced a plethora of forceful evidence at trial. Julie Fernen's testimony placed D.T. and Schuster at Orman Dam the night of the rape. D.T. herself testified as to the alleged penetration by Schuster and reporting the rape shortly thereafter to Julie Fernan, Bechen, and the police. Bechen testified to finding D.T. half-naked, upset, and asking for help. Two psychologists and a psychiatrist testified that D.T. had the mental capacity of only an eight- or nine-year-old. In addition, the psychiatrist and one psychologist testified that D.T. exhibited signs of post-traumatic stress syndrome. Schuster, on the other hand, alleged only that any penetration of D.T. was consensual.

Schuster's testimony via the taped interview by Evans did not present any evidence inconsistent with his defense and, in fact, was the only evidence presented upon which such a defense could be premised. Nowhere in the interview does Schuster admit to raping D.T. Rather, Schuster merely states that the sexual relations between he and D.T. were consensual.[3]

The facts in this case closely parallel the facts in *State v. Forcier*, 420 N.W.2d 884

(Minn.1988). In *Forcier*, the rape victim was twenty-three years old and had an IQ of only 77. *Id.* at 884. The victim reported being forced to submit to fellatio and anal intercourse. *Id.* at 885. The defendant made statements following his *Miranda* warning admitting to fellatio with the victim, but denying anal intercourse. *Id.* While the court found that the defendant's statements should not have been admitted at trial, it declared the error harmless in light of the other evidence presented at trial. *Id.* at 887. The victim had promptly reported the matter to his neighbor, boss, and the police; the medical evidence corroborated the victim's testimony; and, the defendant failed to present any witnesses or testimony at trial, instead arguing that penetration of the victim was consensual. The court thus determined that the jury had sufficient evidence to sustain its verdict absent the defendant's statements. *Id.*

In light of the other evidence presented at trial, we find that Schuster's statements to Evans, admitting that he penetrated D.T., were not essential to sustain Schuster's conviction. Thus, while Schuster's statements were inadmissible, we find their admission to be harmless error and affirm Schuster's conviction.

MILLER, C.J., and WUEST, J., concur.

HENDERSON and SABERS, JJ., dissent.

---

**3.** Schuster's admissions to Evans were as follows:

EVANS: When you and [D.T.] walked off from the group, how long were you gone?
SCHUSTER: About a half hour.
EVANS: Was she still flirting and
SCHUSTER: Well, yeh, she was definitely doing that.
EVANS: Did she ever say anything to you that she wanted you to have sex with her?
SCHUSTER: Did she say anything?
EVANS: Did she just come right out and
SCHUSTER: No but, when she's got her hand down your pants, it's pretty obvious, you know, she pretty much did what she wanted to do.
EVANS: That night, did you have any kind of sexual relations with her?
SCHUSTER: Yeh.
EVANS: You did have?
SCHUSTER: Well I don't know if you'd call it that, I just

EVANS: The tape came to the end we're on side two same two people present. Ah, the last question that I asked Shawn was that at anytime during the night, I guess it would have been late Friday night the 10th of May or Saturday morning the 11th of May, did you ever at anytime have sexual relations with [D.T.]?
SCHUSTER: Yes. No. Like I said I don't know if you'd call it that or not. We tried and I couldn't get it up so.
EVANS: Did you stick your fingers in her vagina?
SCHUSTER: Um, I'm not sure, if I did or not.
 * * * * * *
EVANS: When you guys were trying to have sex and you said you couldn't get it up, did you get to the point of trying to put it inside her?
SCHUSTER: Yeh, we tried. She even got on top of me.
Interview Transcript, p. 8–9, 10.

HENDERSON, Justice (dissenting).

When Shawn Schuster was repeatedly denied his Sixth Amendment right to counsel and compelled to make incriminating statements against himself, in violation of the Fifth Amendment, antagonists Nulle and Evans were not performing new methods of crime solving or protecting the public during their quest to investigate a rape claim. Rather, their actions were the type of old-fashioned police work that *Miranda* and *Edwards* sought to prevent. These experienced law enforcement officials knew better. Every bit of evidence used to incriminate Schuster was obtained in violation of his Constitutional rights. Due to this degradation of rights, I dissent.

"No distinction can be drawn between statements which are direct confessions and statements which amount to 'admissions' of part or all of an offense." *Miranda v. Arizona*, 384 U.S. 436, 476–77, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). Thus, the salient evidence extracted from Schuster was, by all means, tantamount to a compelled confession.

In a prime example of why the exclusionary rule exists, during a two- to four-hour interrogation, Officer Nulle ignored Schuster's request for an attorney on at least 12 occasions. His blatant disregard for Schuster's Constitutional rights was clearly evident when he testified.

Q: [Attorney]: In any event, it was clear in your mind that he wanted an attorney ...?
A: [Nulle]: Yes, it was.
Q: And you wouldn't let him have one. You wouldn't let him make that phone call.
A: Nope.

Nulle further coerced incriminating statements through violence and intimidation as especially exemplified when he forcibly threw Schuster down into a chair. If the police initiate interrogation without the presence of counsel and without a valid waiver by the accused, the accused's statements are inadmissible in the prosecution's case-in-chief. *Miranda*, 384 U.S. at 475–476, 86 S.Ct. at 1628–29; *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *State v. Cody*, 293 N.W.2d 440 (S.D.1980). When Schuster invoked his right to an attorney, all interrogation was supposed to cease until counsel was present. *Id.* The trial court was most proper in refusing to admit the unconstitutionally obtained statements.

Following Nulle's interrogation, Deputy Sheriff Evans took custody of Schuster for purposes of obtaining hair and clothing samples. Schuster maintains that he repeated his demands for an attorney but was again denied. At trial, Evans admitted telling Schuster that if he did not consent, the police would obtain a court order anyway; whereupon, Schuster "consented" to the hair and clothing samples. During the interrogation that ensued, he admitted to attempting vaginal intercourse, could not recall if he had penetrated the girl with his fingers, and stated that D.T. had pulled down his pants and performed oral sex on him. Without the aid of counsel, Schuster was compelled to admit to sexual penetration, a key element in the crime of rape. In these circumstances, the fact that he made such statements is consistent with the conclusion that the compelling influence of the interrogation finally forced him to do so. *Miranda*, 384 U.S. at 477, 86 S.Ct. at 1629. Under the auspices of *Miranda*, his admissions to the actions essentially amount to a confession to part of the offense.

Although Evans could not recall if Schuster had requested an attorney, his recollection is irrelevant. First, Nulle's actions had already created a coercive atmosphere and any subsequent waiver of the right to counsel must constitute a voluntary, knowing, and intelligent relinquishment of that right. *Edwards*, 451 U.S. at 484–85, 101 S.Ct. at 1884–85; *Cody* at 444. As no such proof of valid waiver has been shown by State, Schuster's incriminating statements are inadmissible. Second, this *Edwards* rule continues to apply for each subsequent law enforcement officer who continues the questioning, *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), and serves to prevent police from badgering a suspect into waiving his previously

asserted rights. *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983). Constitutional violations do not dissipate as they are passed down the line.

The tendered majority opinion, while recognizing the violative nature of Evans actions, sweeps such a glaring Constitutional violation under the proverbial rug of harmless error. Certainly, a Constitutional error can be harmless if it had no likelihood of changing the result, however, *such a determination must be clear beyond a reasonable doubt. United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *State v. Michalek*, 407 N.W.2d 815, 819 (S.D.1987). To ensure that its dictates concerning the rights of the accused were followed, the United States Supreme Court declared that statements taken in violation of the principles established by *Miranda* and *Edwards* may not be used as substantive evidence against the defendant at trial.

However, the Supreme Court has found on one occasion that the use of statements obtained in violation of an accused's constitutional rights could be declared "harmless." In *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972), after the defendant had been indicted and had obtained counsel, a police officer posed as a fellow prisoner confined to the same cell. In the subsequent trial, the officer testified to incriminating statements made by the defendant while in jail. Milton asserted that his statements to the officer were obtained in violation of his Fifth and Sixth Amendment rights.

"Assuming, *arguendo*, that the challenged testimony should have been excluded" the Supreme Court began, "the record clearly reveals that any error in its admission was harmless beyond a reasonable doubt." *Milton*, 407 U.S. at 372, 92 S.Ct. at 2175. In addition to the undercover officer's testimony, the *Milton* jury was presented with overwhelming evidence of Milton's guilt in the form of *three full confessions* made prior to indictment—sufficient in the Supreme Court's view to pro-claim the incriminating statements as harmless error.

Only two years ago, *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), citing *Milton* for the proposition that a defendant's statements obtained in violation of the Sixth Amendment may be admitted if found to be harmless error, held that the same analysis applies to coerced confessions. While in prison for one crime, Fulminante, who was abused by other prisoners, confessed another crime to a fellow inmate in exchange for protection. The fellow inmate, a paid FBI informant, passed the information to the authorities who subsequently indicted Fulminante for the crime. However, the Court found that absent the unconstitutional confession, the physical evidence would have been insufficient, and the jury was less likely to believe the testimony of an alleged second confession. 499 U.S. at ——, 111 S.Ct. at 1258–59.

Instanter, according to the admissible testimony, D.T. was with Schuster at the dam on the night of the alleged rape. ("Alleged" because the rape kit was never introduced into evidence.) D.T. was later found half-naked, upset, and stated that she had been raped by Schuster. Two medical experts testified that she exhibited signs of post-traumatic stress syndrome. That was the extent of the medical testimony. At the end of the State's case, Schuster's motion for acquittal was denied. Where is the "overwhelming evidence" as in *Milton?* What evidence establishes guilt "beyond a reasonable doubt"? Where is the "plethora of forceful evidence" or the "sufficient evidence to sustain" the verdict as proclaimed by the majority opinion?

Without Schuster's inadmissible statements, no such support for the verdict existed in the prosecution's case-in-chief. In fact, as the rape kit was not admitted (nor was any forensic evidence), *no actual proof of any sexual contact exists.* No, the *only* medical evidence presented came from two psychologists and a psychiatrist. At least in *State v. Forcier*, 420 N.W.2d 884 (Minn.1988), relied on by the majority

**574**

writing, physical medical evidence linked the defendant to that crime. Here, there was no physical medical evidence connecting Schuster with a rape. *Fulminante* contained substantially more incriminating evidence than here, yet was deemed reversible error.

In *Fulminante,* Justice White's analysis noted that the admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. *Fulminante,* 499 U.S. at ——, 111 S.Ct. at 1257. Certainly, Schuster's inadmissible statements had "a profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." *Id.*

Despite the majority's claim of sufficient evidence, Schuster's statements were the product of constitutionally impermissible methods of inducement. We do not decide the ultimate issue of guilt or innocence, that is for the jury to decide in a new trial free of constitutional infirmity, which this Court is at liberty to order. *Haynes v. Washington,* 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963). Reasonable doubt? Absolutely. Here, no jury could find Schuster guilty because the State never introduced any Constitutional evidence whatsoever connecting him to a crime.

State has admitted there was Constitutional error and with that I agree. However, I strongly disagree that such atrocities constitute harmless error.

SABERS, Justice (dissenting).

Schuster's admissions to Officer Evans were clearly inadmissible under *Edwards* and *Roberson.* Since it is *not* clear beyond a reasonable doubt that the jury would have returned a verdict of guilty absent the admission of Schuster's statements to Evans, we should reverse under *Chapman* and *Michalek.*

The majority's statement that "Schuster's [taped] testimony ... did not present any evidence inconsistent with his defense" misses the point. The improper admission of the taped interview dictated his defense. It forced Schuster into an obviously inef-

fective defense. Therefore, the admission of this taped interview under these circumstances cannot be "harmless error."