STATE of South Dakota, Plaintiff
and Appellee,

v.

Charles Ray DeNOYER, Defendant
and Appellant.

No. 18804.

Supreme Court of South Dakota.

Argued Sept. 13, 1995.

Decided Dec. 20, 1995.

Mark Barnett, Attorney General, Patricia J. Froning, Assistant Attorney General, Pierre, for plaintiff and appellee.

Becky A. Janssen, Office of the Public Defender, Rapid City, for defendant and appellant.

SABERS, Justice.

DeNoyer was convicted of first degree burglary, second degree rape and as a habitual offender. He was sentenced to life imprisonment on the burglary and rape convictions. He appeals the convictions and enhanced sentences. We affirm.

## FACTS

On June 26, 1993, K.P. and her 3-year-old son drove from her home in Rapid City to visit a friend in Black Hawk, South Dakota.[1] She arrived at her friend's home around 5:30 p.m. While there, K.P. started drinking. Around midnight, she left her son with her friend and went to a bar and continued to drink. Later, she asked a friend, Steve Brandsted, for a ride home. He gave her a ride to pick up her son and to her home. He walked her and her son into the house.

Once inside, K.P. put her son into her bed and laid down beside him. She was wearing blue jeans and a t-shirt at the time which she did not remove. She fell asleep within 10 minutes and Brandsted left through the back door, apparently without locking it.

K.P. was awakened by a man on top of her having sexual intercourse. She began pushing and hitting him. Her son identified the man, saying "Momma, it's Charlie." She continued to strike the man and told him to get out. The man left the bedroom and K.P. went to a neighbor's home to call the police. She told the officers that she had been raped by DeNoyer.

The police searched for DeNoyer and found him walking approximately three miles from K.P.'s residence. He had blood spatters on his shirt and scratch marks on his face. DeNoyer was arrested and taken to the county jail to be interviewed. DeNoyer

---

1. K.P.'s husband was incarcerated on a work release program at the Pennington County Jail. He regularly came home around 6 a.m. to spend a few hours before he went to work.

claims he was informed of some Miranda rights, but was not informed of the continuing right to remain silent. He gave a statement to the detective which corroborated K.P.'s account. This statement was suppressed based on ineffective waiver. However, the trial court ruled the statement could be used to impeach DeNoyer if he testified. DeNoyer did not testify.

At a pretrial hearing, DeNoyer offered testimony of two witnesses of prior sexual acts and comments by K.P. These statements were held inadmissible under SDCL 23A–22–15 (the "rape shield" statute) or because the evidence was misleading, de minimus, or unfairly prejudicial.

The State also filed an information alleging DeNoyer was a habitual offender under SDCL 22–7–8.1. Four prior felony convictions were introduced and DeNoyer stipulated to his identity. DeNoyer argued the prior convictions could not be used to enhance his sentence because the convictions were obtained in violation of his constitutional rights. The trial court held that DeNoyer did not overcome the presumption of regularity of the prior convictions. DeNoyer appeals.

### 1. Were DeNoyer's Prior Convictions Valid for Enhancement Purposes?

DeNoyer was convicted of first degree burglary and second degree rape, and upon application of the habitual offender statutes, he received two life sentences.

DeNoyer claims his sentence should not have been enhanced because his prior convictions were obtained in violation of his constitutional rights. This court discussed collateral attacks on convictions in *Stuck v. Leapley*, 473 N.W.2d 476 (S.D.1991).

> First, the defendant has the initial burden of placing the validity of the prior convictions in issue[.]
>
> Second, ... where the defendant places the constitutional validity of the prior convictions in issue by a motion to strike or other appropriate means, the state has an initial burden of proving the existence of

prior valid convictions by a preponderance of the evidence[.]

> Third, when state meets its initial burden of proof, the burden shifts to the defendant to show that the prior convictions are invalid.

*Stuck*, 473 N.W.2d at 478–79 (citations omitted).

Additionally, in *State v. Moeller*, 511 N.W.2d 803 (S.D.1994) we stated:

> [W]e require the state first establish that there is a document which appears on its face to be a valid judgment. Upon such a showing by the state the doctrine of "presumption of regularity" is then applied, and unless the defendant presents credible evidence that there is some constitutional infirmity in the judgment it must stand.

*Moeller*, 511 N.W.2d at 809, (citing *State v. King*, 400 N.W.2d 878, 879 (S.D.1987)).

DeNoyer questions the validity of three of his four prior convictions:

■ A. Accessory to Commit a Crime. At his arraignment, DeNoyer entered a plea of "not guilty" to this charge. He later pled guilty, apparently as part of a plea agreement. He argues this conviction cannot be used for enhancement because he was not advised of his *Boykin*[2] rights when he entered his guilty plea. Guilty pleas obtained in violation of the defendant's constitutional rights cannot be used for enhancement purposes. *State v. (John H.) King*, 383 N.W.2d 854, 856 (S.D.1986) (citations omitted).

DeNoyer introduced a transcript from the continuation of a hearing to establish that he was not advised of his *Boykin* rights. However, at an arraignment on burglary and accessory charges on May 12, 1989, he *was* advised of his *Boykin* rights. The hearing at which he asserts he was not advised and did not waive his *Boykin* rights was a "Continued Hearing and Sentencing." That record states that he was charged with accessory to commit a crime and third-degree burglary and that he entered guilty pleas to both crimes. The initial sentencing hearing is not part of the record. At that hearing, he apparently pled guilty to both charges, but

2. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

when a factual basis for the accessory charge was not established, the judge continued the hearing.

■ In order to challenge the conviction, "the defendant must produce credible evidence to establish a basis to declare his conviction was constitutionally defective." *Moeller*, 511 N.W.2d at 810. "[W]hen no transcripts exist, for whatever reason, absent misconduct by the state, the court will be presumed to have discharged its duty." *Id.*, citing *U.S. v. Dickerson*, 901 F.2d 579, 583 (7th Cir.1990); *see also Parke v. Raley*, 506 U.S. 20, 28–29, 113 S.Ct. 517, 523, 121 L.Ed.2d 391, 404 (1992). Without the transcript from the initial sentencing hearing, DeNoyer has not established the absence of his *Boykin* rights.

■ B. Third Degree Burglary. Using the same "continued hearing" transcript, DeNoyer claims his conviction for third degree burglary cannot be used because there is no record that he pled guilty to the charge. It is defendant's duty to challenge the facially valid judgment with evidence of the invalidity. *Moeller*, 511 N.W.2d at 810. Without a transcript of his guilty plea, DeNoyer did not meet the challenge.

■ C. Receiving Stolen Property. DeNoyer argues that although he was advised of his *Boykin* rights, he did not expressly waive them on the record. *Boykin* requires an "intelligent and voluntary" guilty *plea*, which can be shown by a waiver of the defendant's rights. *Boykin*, 395 U.S. at 244, 89 S.Ct. at 1712–13. Before accepting a guilty plea, the trial court must, "address the defendant personally in open court ... and inform him of, and determine that he understands:

> (4) That if he pleads guilty or nolo contendere there will not be a further trial of any kind, *so that by pleading guilty or nolo contendere he waives* the right to a trial, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself[.]"

SDCL 23A–7–4 (emphasis added).

■ The trial court advised DeNoyer of each of his rights separately and asked whether he understood each right. The trial court also asked if he was represented by counsel and asked if his plea was "of [his] own free will and accord." To both questions, he answered "Yes." The trial court asked him: "You understand if you enter a plea of guilty, you will give up the right to have a trial by court or jury?" He answered, "Yes."

■ South Dakota law requires a showing that defendant understood the nature and consequences of his plea. SDCL 23A–7–4; *Moeller*, 511 N.W.2d at 810 (quoting *Logan v. Solem*, 406 N.W.2d 714, 717 (S.D.1987)). "'It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" *Weiker v. Solem*, 515 N.W.2d 827, 833 (S.D. 1994) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546–47, 81 L.Ed.2d 437, 443 (1984)). We hold that the guilty plea on the "receiving stolen property" charge was not shown to be involuntary.

## 2. Was Enhancement of DeNoyer's Sentences Proper?

DeNoyer was convicted of second degree rape and third degree burglary, two Class II felonies. None of his prior offenses were "violent," as defined by SDCL 22–1–2(9). His sentences were enhanced to Class B felonies punishable by **mandatory** life sentences under SDCL 22–7–8.1. DeNoyer claims this result is illogical, because if an offender has been convicted of prior crimes of violence, the sentence for the principal felony is enhanced only to the level of a Class 1 felony, punishable by a maximum of life imprisonment.

■ This court found the sentence enhancement scheme was not necessarily inconsistent in *State v. Stetter*, 513 N.W.2d 87 (S.D.1994). Sentences for prior violent offenders are enhanced to a Class 1 felony *"regardless of the classification of the principal felony."* *Id.* at 89 (emphasis original). Sentences for offenders with three or more prior nonviolent crimes are enhanced by two classes from that of the principal felony. SDCL 22–7–8.1; *Stetter*, 513 N.W.2d at 89.

DeNoyer argues he is essentially being punished for not committing a violent offense. He claims such a result conflicts with the purpose underlying the habitual offender statutes.[3]

> While the statutes may produce results which appear inconsistent under this particular fact situation, [defendant] has not shown that the legislative intent was not followed. "[W]hen a statute is clear and unambiguous it is improper for courts to attempt to go behind the express terms of the provision so as to legislate that which the words of the statute do not themselves provide. In other words, the 'letter of a clear and unambiguous statute cannot be disregarded under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute.'"

*Id.* (citations and quotation omitted). DeNoyer also argues, by way of hypotheticals, that certain results under SDCL 22–7–8.1 would be "absurd and unreasonable." *State v. Franz*, 526 N.W.2d 718, 720 (S.D.1995) (citations and quotation omitted). However, he confuses "absurd" results with "seemingly harsh" results and "[t]his court 'will not liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction.'" *State v. French*, 509 N.W.2d 693, 695 (S.D.1993) (citations omitted).

DeNoyer's arguments are essentially the same arguments advanced in *Stetter*. It is obvious the legislature was trying to punish not only violent offenders but repeat offenders. Therefore, we reject DeNoyer's arguments.

### 3. *Was Exclusion of Testimony of Prior Conduct of the Victim Appropriate?*

The trial court excluded testimony of two prior "specific acts of 'affection, flirtation and sexy-talk'" by the victim after a rape shield hearing out of the presence of the jury.

As a general rule, the admission of evidence concerning a rape victim's prior sex-

ual conduct is precluded by SDCL 23A–22–15. This statute, like rape shield laws in other jurisdictions, represents a legislative determination that in most instances, such evidence is not relevant and highly prejudicial to the victim. Evidence of a rape victim's prior sexual encounters may be admitted if the trial court finds that it is relevant and material to a fact at issue in the case. This determination is entrusted to the sound discretion of the trial court. We will not interfere with the trial court's determination unless an abuse of discretion is clearly demonstrated.

*State v. Lykken*, 484 N.W.2d 869, 874 (S.D. 1992) (quoting *State v. Woodfork*, 454 N.W.2d 332, 336–37 (S.D.1990)).

Testimony of Steve Brandsted was excluded. Brandsted stated the reason K.P. told him she needed a ride home from the bar was to get away from another man who was buying her beer "because he thinks he's going to [have sex with] me." Brandsted testified that, on the way to pick up her son, K.P. made sexual references and promised him "oral sex, any kind of sex I wanted" if he stayed overnight. He testified K.P. fell asleep in less than ten minutes.

DeNoyer claims this testimony is relevant to the issue of credibility of the complaining witness because consent is an issue and that the actions were not "sexual conduct."

This court has held that "[s]exual episodes *between the defendant and complainant* will often be relevant to the issue of consent." *Lykken*, 484 N.W.2d at 874 (emphasis added). In *Woodfork*, 454 N.W.2d 332, the defendant argued he should have been allowed to cross-examine the victim about prior sexual encounters with the defendant's friend, claiming such testimony was relevant to the issue of consent. The *Woodfork* court found, "no merit in this argument. The record in this case is devoid of any substantial evidence which would tend to suggest that because the victim had consensual sexual intercourse with [the friend], then she would be inclined to have consensual sexual intercourse with [the

---

**3.** "[A]ll ... criminal and penal provisions and all penal statutes are to be construed according to the fair import of their terms, with a view to effect their objects and promote justice." SDCL 22–1–1.

defendant]." *Woodfork*, 454 N.W.2d at 337. Therefore, the above testimony is not relevant to the issue of consent.

DeNoyer also argues that statements were not "sexual conduct," and points to a Georgia case which held that a victim's statement she wanted to go to a party to "get some [sex]" was not admissible as past sexual behavior but "was admissible as evidence of existing motive and state of mind." *Villafranco v. State*, 252 Ga. 188, 313 S.E.2d 469, 473 (1984). However, the Georgia "rape shield" statutes are different from the South Dakota statutes. In a later case which expands on the *Villafranco* principle, the Court of Appeals of Georgia stated:

> Under OCGA 24-2-3 evidence of the past sexual behavior of the complaining witness is admissible where, during an in camera hearing, the trial court finds the accused could have reasonably believed that the victim consented to the conduct of which complaint was made.

*Moore v. State*, 195 Ga.App. 814, 395 S.E.2d 13, 15 (1990). These statements and actions did not take place in DeNoyer's presence, so he cannot persuasively argue that the victim consented to intercourse with him based upon her comments to Brandsted.

■ Testimony of Rodney Randall was also excluded. Randall testified K.P. smiled and flirted with him in a convenience store when they were introduced by DeNoyer. He saw them again in the parking lot after they left the store. DeNoyer said, "Hey, this girl wants to jump your bones." Randall also claimed that on another occasion, K.P. lied so DeNoyer could remain at her house after his curfew at Friendship House. Randall also testified that K.P. and "Barnie," another friend, were in the bathroom together for "about a half hour or something like that." This evidence does not relate to the victim's ability or willingness to consent to sex with DeNoyer on the night of the rape. It is testimony of prior activity by the victim and it is what the "rape shield" statutes were designed to keep from the jury. The trial court allowed Randall to testify to the relationship he perceived between DeNoyer and K.P., but all testimony of acts with others was excluded. The trial court made the right decision in excluding such testimony because it is "not relevant and [is] highly prejudicial to the victim." *State v. Blalack*, 434 N.W.2d 55, 57 (S.D.1988).

## 4. Was DeNoyer's Statement Voluntary and Admissible For Impeachment?

DeNoyer argues a statement he made to a police detective the morning of the alleged rape should not be available for impeachment. The trial court found the statement was obtained in violation of *Miranda* rights as DeNoyer's waiver was involuntary due to his sleepiness. DeNoyer made a statement at that time which corroborated K.P.'s testimony. He claims the statement should be excluded as involuntary because he was intoxicated and sleepy while answering the detective's questions. Initially, the trial court suppressed the statement, then decided the statement could be used for impeachment if the defendant took the stand. DeNoyer did not testify. This court has rejected State's arguments that a defendant did not preserve his right to appeal when he did not testify. *State v. Brings Plenty*, 459 N.W.2d 390, 394–95 (S.D.1990); *State v. Swallow*, 405 N.W.2d 29, 38 (S.D.1987). No such arguments were made in this case.

■ Statements obtained in violation of a defendant's Miranda rights cannot be introduced into evidence in the prosecution's case in chief. *State v. Williamson*, 349 N.W.2d 645, 646 (S.D.1984). However such statements, if voluntary, may be used to impeach a defendant who later gives conflicting testimony on his own behalf. *Id.; See Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). The statements may be used only if they are "voluntary." *Brings Plenty*, 459 N.W.2d at 396. Any use of an involuntary confession violates due process. *Swallow*, 405 N.W.2d at 38.

■ The finding of voluntariness is binding upon this court unless it is found to be clearly erroneous. *State v. Tapio*, 459 N.W.2d 406, 411 (S.D.1990). "In reviewing the trial court's findings, we consider the evidence in the light most favorable to the finding." *Id.* To determine whether defendant's statements were voluntary, "we look

to traditional due process analysis." *Id.* Finding a defendant's statement "voluntary" is a two-step process. First, the court must determine whether there has been police coercion. Then the court must determine if, under the totality of the circumstances, the defendant's will was overborne. *Id.* The following factors are used to determine whether police coercion existed:

> "[T]he duration and conditions of detention, ... the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his power of resistance and self-control."

*Id.* (quoting *Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 965–66 (1987)). Factors used to determine whether police coercion overcame a defendant's free will are:

> [His] age, his character, his record as to former crimes, educational background, and mental capacity; the legality or illegality of his arrest; the conditions of his incarceration; delay in arraignment; his removal to a distant jail; prolonged questioning ... by the police[.]

*Id.* The trial court's determination appears to rest on the easygoing conversation between the police officer and DeNoyer. Applying the above factors, the trial court was not clearly erroneous in finding DeNoyer's statement voluntary. DeNoyer had a G.E.D. and a prior record. He was legally arrested and was not held for long periods of time without food or drink. He was talking easily with the interviewing officer. The trial court considered these factors along with DeNoyer's initial sleepiness and possible intoxication, but held the statements were admissible for impeachment purposes. There is no showing that the trial court was clearly erroneous in finding DeNoyer's statements voluntary.

DeNoyer argues the trial court must take an orthodox approach, finding voluntariness first, then ruling on the admissibility based on *State v. Thundershield*, 83 S.D. 414, 160 N.W.2d 408 (1968). However, *Thundershield* discussed a statement to be used as substantive evidence in a trial and preceded *Harris v. New York*, which permitted "voluntary" statements to be used for impeachment purposes.

The rationale for allowing such statements for impeachment is so the defendant "can[not] turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths." *Walder v. United States*, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503, 507 (1954). There is no showing that the trial court erred in ruling DeNoyer's statements admissible for impeachment.

### 5. *Denial of Proposed Jury Instructions.*

A. Lesser Included Offenses. DeNoyer claims the jury should have been instructed on the offenses of unlawful entry and refusal to leave. This court has consistently held that unlawful entry and refusal to leave are not lesser included offenses of burglary. *State v. Blakey*, 332 N.W.2d 729, 730–31 (S.D.1983); *State v. Farmer*, 407 N.W.2d 821, 824 (S.D.1987).

B. "Mistake of Fact." DeNoyer claims a "mistake of fact" instruction should have been given on the issue of consent. However, he admits there is no evidence in the record to support this instruction. Also, this court has held that knowledge of the victim's inability to consent is not an element of rape, therefore no mistake of fact instruction must be given. *State v. Schuster*, 502 N.W.2d 565, 569 (S.D.1993).

C. Intent. DeNoyer argues the jury should have been instructed that in order to be found guilty of burglary, he must have had the intent to rape the victim when he entered her home. Although there may be merit to this argument under the majority opinion of *State v. Oster*, 495 N.W.2d 305 (S.D.1993), we conclude that the current burglary statute simply requires that the person remain in the structure after forming the intent to commit a crime. SDCL 22–32–1. We overrule *Oster* to the extent that it provides otherwise.

In this case, Instruction Number 10 provided in part:

> The elements of the offense of first degree burglary, as charged in Count I of the information, each of which the state must

prove beyond a reasonable doubt, are: 1) that the defendant at the time and place alleged in the information, unlawfully entered or unlawfully remained in a structure described as ..., 2) [t]hat said structure was an occupied structure, 3) that the defendant unlawfully entered or unlawfully remained therein with the intent to commit the crime of rape, 4) that the defendant committed the offense in the nighttime.

This instruction more than adequately states the law in South Dakota and there was no error.[4]

### 6. *Denial of Motion for New Trial.*

■ DeNoyer moved for a new trial on the basis of newly discovered[5] testimony of the driver who dropped him off outside K.P.'s home, and because Brandsted's testimony (discussed above) had been suppressed. "[T]he grant or denial of a new trial motion is a matter solely within the discretion of the trial court and will not be disturbed on appeal unless such discretion has been abused." *State v. Dupris*, 373 N.W.2d 446, 448 (S.D. 1985) (citations omitted).

■ "In determining whether a new trial should be granted, the trial court is required to find the new evidence is not cumulative and there is a 'reasonable probability' that it would produce a different result on retrial." *State v. Lodermeier*, 481 N.W.2d 614, 628 (S.D.1992) (citations omitted). A hearing was held for the driver's testimony. The trial court found he provided no new evidence, as he was not an eyewitness to anything other than DeNoyer telling him it was "all right" that DeNoyer remain at the home. The witness provided insufficient substance to change the jury's verdict. We

agree and affirm the trial court's denial of the motion for new trial.

The suppressed testimony of Brandsted has been discussed in section 3 and the trial court did not abuse its discretion in excluding that testimony.

We affirm DeNoyer's conviction and his sentences.

GILBERTSON, J., concurs.

MILLER, C.J., and AMUNDSON, J., concur in part and concur in result in part.

KONENKAMP, J., concurs in result.

MILLER, Chief Justice (concurring in part and concurring in result in part).

Although I generally concur, I write specially to join and enlarge upon the special writing of Justice Konenkamp. Specifically, I depart from the untimely and unnecessary overruling of *State v. Oster*, 495 N.W.2d 305 (S.D.1993). As is reiterated below, because DeNoyer's appeal focuses on the formation of intent, the unlawfulness requirement of *Oster* is entirely irrelevant to the disposition of this appeal.

First, it is crucial to remember that the facts here and in *Oster* have absolutely no similarity whatsoever. *Oster* dealt with the crime of *second-degree burglary* and involved a defendant who was invited into a home and, while there, stole cash out of the homeowner's wallet that he observed laying on the kitchen cupboard. Clearly that factual scenario bears absolutely no resemblance to the circumstances involved in the *first-degree burglary* committed in the present case.

In accordance with the *Oster* decision, the instruction in this case required that the

---

**4.** We respectfully submit that the overruling of *Oster* is neither "untimely," nor "unnecessary" as suggested in Chief Justice Miller's special writing.

    1. The statute plainly provides that any person who remains in an occupied structure after forming the intent to commit a crime is guilty of burglary. We must give effect to plain language.

    2. DeNoyer claims that *Oster* requires a person to form the intent to commit a crime *before* entering. DeNoyer is right if *Oster* is right. If so, Denoyer would be entitled to a new trial upon proper instructions to that effect.

    3. The statute and *Oster* are in direct conflict. We must decide which is right. If we decide the statute is right, we affirm. If we decide *Oster* is right, we reverse and remand for a new trial. We vote to affirm because we must give effect to the plain language of the statute, SDCL 22-32-1.

    4. Therefore, the overruling of *Oster* in this case is neither "untimely" nor "unnecessary."

**5.** DeNoyer was aware of the existence of an individual who had given him a ride to the victim's home at a motions hearing five days before the jury trial.

defendant "unlawfully entered or unlawfully remained ... in an occupied structure[.]" Importantly, neither DeNoyer nor the State challenge the "unlawfulness" condition in the instruction. Indeed, the facts of this case amply demonstrate that the unlawfulness requirement was satisfied. DeNoyer entered the victim's home without her permission when she and her child were sleeping. He remained in her home even after she awoke and began pushing and hitting him.

Rather than disputing the unlawfulness requirement or the jury's finding in this regard, on appeal DeNoyer focuses his argument on criminal intent. DeNoyer contends that the intent to rape must be present at the time he entered the structure, rather than formed after the entry, in order to satisfy the elements of first-degree burglary. This is incorrect. SDCL 22–32–1 states that "any person who enters *or remains* in an occupied structure, with intent to commit any crime therein," is guilty of first-degree burglary if the other elements of the crime are met. The plain language of the statute does not mandate criminal intent be formed only at the time of entry.

I am authorized to state that Justice AMUNDSON joins in this special writing.

KONENKAMP, Justice (concurring in result).

I concur with the majority opinion, except Issue 5.C. to which I concur only in the result. Although I have misgivings about *State v. Oster*, 495 N.W.2d 305 (S.D.1993), that holding is inapplicable to this case. Therefore, I would leave for another day whether Oster should be overruled.