**Scott D. SIMKINS, A Minor, by his Guardian Ad Litem, Eugene L. SIMKINS, Plaintiff and Appellee,**

v.

**The SOUTH DAKOTA HIGH SCHOOL ACTIVITIES ASSOCIATION, Defendant and Appellant.**

**No. 16154.**

Supreme Court of South Dakota.

Argued Oct. 13, 1988.

Decided Jan. 4, 1989.

Richard D. Hagerty, Yankton, for defendant and appellant.

Richard F. Rahn, Winner, for plaintiff and appellee.

SABERS, Justice.

The South Dakota High School Activities Association (Association) appeals a circuit court order holding the Association's transfer rule [1] unconstitutional as applied to Scott Simkins (Simkins).

### Facts

Simkins lived with his parents in the Winner School District. In the fall of 1986, he began his freshman year at Winner High School and participated in interscholastic athletics during the school year. In the spring of that year Simkins expressed a

---

1. Chapter II, Part I, Section 1 of the Association's By–Laws contains several provisions concerning the effect a change of schools has on a student's eligibility for athletic competition. However, these provisions do not affect eligibility for non-athletic competition such as debate, drama, music, etc. Section 1(f) provides:

A student who changes high schools without a corresponding, bona fide change in physical residence of the parents shall not be eligible for athletic competition in the high school to which (s)he has transferred for a period of one year.

desire to attend Sunshine Bible Academy (Academy), a private high school in Miller, South Dakota. Simkins intended to reside in the dormitory provided by the Academy, as his parents remained in the Winner School District. Simkins was informed that he would be ineligible to participate in interscholastic athletics for one year under the Association's transfer rule. Nonetheless, Simkins transferred to the Academy because of his interest in its Bible curriculum.

The Academy filed a request for waiver of the transfer rule because of Simkins' desire to attend the school for its Bible curriculum. The Association's Appeal Committee granted Simkins a hearing, but found him ineligible to participate in athletics at the Academy for a period of one year. The Association based its decision on the transfer rule and the inapplicability of the hardship exception [2] to Simkins. Simkins appealed the decision claiming the transfer rule infringed upon his rights to due process and equal protection of laws. Based on Simkins' claims, the circuit court reversed the decision of the Association and allowed Simkins to compete during the balance of his sophomore year. The Association appeals and we reverse.

### 1. *Due process.*

Simkins claims that the transfer rule creates an irrebuttable presumption of ineligibility. He argues that such a presumption denies him the constitutional right to procedural due process, as he was not afforded a meaningful opportunity for a hearing to rebut the presumption.

A challenger must assert a life, liberty, or property interest for due process protections to attach. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Court in *Roth* stated:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Id.,* 408 U.S. at 577, 92 S.Ct. at 2709.

Simkins cites to *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), in support of his claim that participation in high school athletics is a protected property interest. *Goss* involved a child's expulsion from school without any notice or opportunity to be heard. The Court recognized public education as a property right and held that some due process was required prior to suspension. The Court stated that "the *total exclusion* from the educational process for more than a trivial period, . . . is a serious event in the life of the suspended child." (emphasis added). *Id.,* 419 U.S. at 576, 95 S.Ct. at 737. Simkins has not suffered a "total exclusion" from the educational process and has not raised a sufficient life, liberty, or property interest to which due process would attach.

*In re U.S. ex rel. Missouri State High School Activities Association,* 682 F.2d 147 (8th Cir.1982) concerned a challenge to a similar transfer rule. In a footnote the court disposed of the challenge noting the reasoning of *Walsh v. Louisiana High School Athletic Association,* 616 F.2d 152 (5th Cir.1980) which held that a student's interest in interscholastic athletic participation was a mere expectancy, rath-

---

**2.** A hardship exception to the transfer rule is found in the Association's Constitution, Article VII, Section 3(j):

Except for the eligibility rule in regard to scholastics and age, the Board of Control, or the Executive Secretary, as hereinafter provided in Section II, shall have authority to waive the enforcement of any eligibility rule when it appears that an individual student would be unjustly penalized because of (a) death of a parent; (b) divorce; (c) court adjudicated separation of the parents; (d) change in econom-

ic status of the parents beyond the control of the student's family which forces the transfer. A waiver under this sub-section shall only be granted when the economic change is a foreclosure, bankruptcy, or parents loss of job which would require documentation by the parents; (e) assignment, by any governmental agency, of a student to a particular school or school district; (f) assignment, by any governmental agency, of a student to a facility such as McCrossan Boys Ranch.

er than a protected entitlement. Based on *Walsh,* the *Missouri* court stated:

> The specified procedures combined with the availability of application under the hardship exception satisfy any procedural due process requirements. (footnote omitted).

*Missouri State High School Association, supra* at 153. Similarly, Simkins was given a hearing concerning the transfer rule and the applicability of the hardship exception to him. Thus, procedural due process requirements, if any, were satisfied.

### 2. *Equal protection.*

■ The transfer rule creates two classifications. A student, otherwise eligible, transferring to another school without a change of residence by his or her parents is generally ineligible to participate in athletic competition for one year, while other students not transferring are eligible. However, this classification is not suspect nor does it burden a fundamental right. Thus, the applicable test is whether the classification bears some rational relationship to a legitimate purpose. *Mathews v. de Castro,* 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). Simkins argues there is no rational relationship and that the rule fails under even minimal scrutiny.

The purpose of the transfer rule is to discourage school switching by athletes and recruiting of athletes by member schools. Neither Simkins, nor the trial court question the legitimacy of this purpose. Rather, Simkins questions whether the rule is rationally related to this purpose. While the rule clearly serves its purpose in discouraging switching and recruiting, it may do so in an overly broad manner. Some students, such as Simkins, may be denied athletic eligibility even though they were not recruited and their reasons for transfer do not relate to athletics.

Under the minimal scrutiny mandated in this case, the overly broad classification does not deny Simkins' right of equal protection. A rule does not fail the minimal scrutiny test simply because it is "not made with mathematical nicety or because in practice it results in some inequality."

*United States Railroad Retirement Bd. v. Fritz,* 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368, 376 (1980) (*citing Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–02 (1970)). The courts must give great deference to the rule-making body in determining the rationality of a rule. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981); *Fritz, supra; Dandridge, supra.* The Association determined that the transfer rule was their best means of discouraging switching and recruiting with their limited resources. We cannot say that this was irrational.

Several courts have upheld the constitutionality of such transfer rules. *Missouri State High School Association, supra; Walsh, supra; Scott v. Kilpatrick,* 286 Ala. 129, 237 So.2d 652 (1970); *Kriss v. Brown,* 180 Ind.App. 594, 390 N.E.2d 193 (1979); *Cooper v. Oregon School Activities Association,* 52 Or.App. 425, 629 P.2d 386 (1981), *rev. denied,* 291 Or. 504, 634 P.2d 1347 (1981). As stated by the Eighth Circuit Court of Appeals:

> Once a rational relationship exists, and it exists here, judicial scrutiny must cease. Whether the rule is wise or creates undue individual hardship are policy decisions better left to legislative and administrative bodies. Schools themselves are by far the better agencies to devise rules and restrictions governing extracurricular activities. (footnote omitted).

*Missouri State High School Association, supra* at 152.

REVERSED.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I dissent for the reason that S.D.H.S.A.A.'s transfer rule fails to take into consideration student transfers to schools with boarding facilities, whether public or private. This little prairie high school, known as Sunshine Bible Academy, has students who reside at the school. Their parents often live hundreds of miles away. These students and parents desire a Christian-oriented curriculum. Simkins had a bona-fide

residence. He wanted to study the Bible. He is being penalized for being a boarding student who wants to study the Bible. Simkins is denied participation in athletics for pursuing a Christian education. This rule does not apply to such high school activities as music and debate. Simkins was not recruited to play ball or a clarinet. He can participate in music and debate, but not athletics. This is a violation of the equal protection clause, because a rational relationship does not exist between the rule and all students in all extra-curricular activities.

In *Anderson v. South Dakota High Sch. Activities Ass'n*, 247 N.W.2d 481 (S.D. 1976), this Court held that South Dakota courts would not interfere with the eligibility decisions of a voluntary athletic association regarding student athletes *unless the association acts in an arbitrary and capricious manner.* Here, this Board arbitrarily refused to grant an exception to a transfer student attending a boarding facility school, who simply wanted a Christian education. The specific hardship restrictions are too restrictive and abusive to young students. The classification is not "rational," for it imposes a penalty upon an innocent boy who had the courage to leave a high school and the comforts of his home to be educated in a Christian atmosphere, in a small high school on the prairie, where he eats and sleeps and prays.