ALLEGHENY CORPORATION, INC., a corporation, Plaintiff/Appellant,

v.

RICHARDSON, INC., a corporation; William Richardson; Helene Steen, Special Administrator for the Estate of Charles A. Steen, deceased; Verna Steen; Cottonwood Ranch and Livestock Co., a corporation; Ellsworth Brown, also known as Vernon Brown; and George Chalmers, Defendants/Appellees.

No. 17056.

Supreme Court of South Dakota.

Argued Sept. 19, 1990.

Decided Nov. 28, 1990.

Clark J. Bormann, Bismarck, for appellant.

Charles M. Thompson of May, Adams, Gerdes and Thompson, Pierre, Newell E. Krause, Mobridge, for appellee Richardson, Inc. and William Richardson.

Terrence R. Quinn, Belle Fourche, for appellees Charles A. Steen, Verna Steen and George Chalmers.

Kenn A. Pugh, Dupree, for appellee Estate of Charles S. Steen.

John J. Delaney, Rapid City, for appellee Helene Steen.

Andrew Aberle, Timber Lake, for appellee Cottonwood Ranch and Livestock Co.

HEEGE, Circuit Judge.

Allegheny Corporation, Inc., (Allegheny) seeks specific performance of several alleged contracts by which Allegheny claims to have purchased two South Dakota ranches. The circuit court held that SDCL 47–9A–1 barred Allegheny from owning South Dakota farmland and granted summary judgment. We affirm.

Allegheny was incorporated in and has its principal office in the State of Kansas. It is a "foreign corporation" under the South Dakota Business Corporation Act (SDCL 47–2–1) and the Family Farm Act (SDCL 47–9A).

■ SDCL 47–9A–1 provides:

The Legislature of the state of South Dakota recognizes the importance of the family farm to the economic and moral stability of the state, and the Legislature recognizes that the existence of the family farm is threatened by conglomerates in farming. Therefore, it is hereby declared to be the public policy of this state, and shall be the provision of this chapter, that, notwithstanding the provisions of § 47–2–3, *no foreign corporation*, and no domestic corporation except as provided herein, *shall be* formed or *licensed under the South Dakota Business Corporation Act for the purpose of owning*, leasing, holding or otherwise controlling *agricultural land* to be used in the business of agriculture. [emphasis supplied].

SDCL 47–9A–1 is plain and unambiguous. It prohibits "foreign corporations" from being licensed to own South Dakota agricultural land to be used in the farming business. The issuance, by the Secretary of State of the State of South Dakota, of a "Certificate of Authority" purporting to permit Allegheny to purchase South Dakota farmland was ineffectual for that purpose.

This court has previously said that it "will not enlarge a statute beyond its face where the statutory terms are clear." *Simpson v. Tobin*, 367 N.W.2d 757, 763 (S.D.1985). "The meaning must be read from the language chosen by the legislature," *Petition of Famous Brands, Inc.* 347 N.W.2d 882, 886 (S.D.1984), "and said intention is to be ascertained by the court primarily from the language expressed in the statute." *State Theatre Co. v. Smith*, 276 N.W.2d 259, 263 (S.D.1979).

■ This court is without power to amend or revise plain and unambiguous legislative acts. To create an ambiguity, the comma following "foreign corporation" in SDCL 47–9A–1 would have to be removed. The wisdom of the restriction on foreign corporations is a legislative not a judicial responsibility. *Simkins v. South Dakota High School Activities Association*, 434 N.W.2d 367 (S.D.1989).

■ The attorney general's office, on numerous occasions after the enactment of SDCL 47–9A–1 in 1974, interpreted the statute as prohibiting the licensing of foreign corporations to own South Dakota farmlands. In 1980, however, the then attorney general, revised the previous position of the attorney general's office and advised the Secretary of State that SDCL 47–9A–1 "does not absolutely prevent a foreign corporation from being authorized to do business in South Dakota if the corpo-

ration owns, leases, holds or otherwise controls agricultural land." Report of Attorney General, 1979–1980 Official Opinion No. 80–31.

We are urged to consider the attorney general's opinion in interpreting SDCL 47–9A–1 because of the apparent acquiescence in that opinion by the Secretary of State and the legislature for the past ten years.

In *Livestock State Bank v. State Banking Commission*, 80 S.D. 491, 496, 127 N.W.2d 139, 141–42 (1964) this court said:

> Respondent argues that the continued existence of Rule 17 since 1945, its approval as a valid rule in an Attorney General's opinion of August 16, 1950, and acquiescence therein by the banking industry and the legislature, should be considered in the upholding of the validity of the rule. Respondent states that in ascertaining legislative intent, administrative interpretation of a statute may be considered, especially where it is of long standing. [citations omitted]. *This rule has no application except when the statute in question is ambiguous. Burke v. Burkhart* (1920), 42 S.D. 604, 176 N.W. 743; *State ex rel. Widdoss v. Esmay* (1948) 72 S.D. 270, 33 N.W.2d 280. [emphasis supplied].

SDCL 47–9A–1 is not ambiguous. Allegheny had no authority to purchase the two ranches in question. Therefore, it could not successfully maintain an action for specific performance of the alleged contracts to purchase the land.

It is unnecessary to consider other errors alleged and we do not express any opinion on other issues raised in this appeal.

The circuit court judgment is affirmed.

MORGAN, HENDERSON and SABERS, JJ., concur.

WUEST, J., concurs in result.

HEEGE, Circuit Judge, for MILLER, C.J., disqualified.

WUEST, Justice (concurring in the result).

The trial court held as a matter of law there was no contract and gave it as one of his reasons for granting summary judgment. I agree with that conclusion and therefore concur in affirming summary judgment.

Because this case can be affirmed on the contract issue, in my opinion we should refrain from overruling the opinion of the attorney general in this case because many corporations may needlessly be affected. Further, the issue is not as clear a portrait as the majority opinion paints it. The Attorney General grants that (because of the comma after "foreign corporation") the literal meaning of the statute seems to be that "no foreign corporation *at all* can be established which has purposes of owning ... agricultural land[.]" Attorney General Opinion No. 80–31, p. 191 (emphasis added). However, he urges that this meaning is inconsistent with the purpose of the statute, and with its provisions as a whole. *Id.* He concludes:

> [I]nterpreting the provisions of the entire chapter together, it is my opinion that SDCL 47–9A–1 does not absolutely prevent a foreign corporation from being authorized to do business in South Dakota if the corporation owns ... agricultural land. In this regard, foreign corporations I believe should be viewed in the same light as domestic corporations, and *the evil which the statute addresses, i.e., conglomerates in farming, can be as readily addressed through treating foreign corporations equally with domestic corporations as it could be by excluding all foreign corporations.*

*Id.* at 191–192 (emphasis added).

The Attorney General then points out the regulations which the Act imposes on domestic (and, in his view on foreign) corporations, to prevent the purchase of farm land by conglomerates. No corporation can deal in farmland unless it is certified [1] as a

---

1. Every corporation proposing to farm in South Dakota must file a report with the Secretary of State (SDCL 47–9A–16, 17). Before it commences farming, it must obtain the Secretary's certificate of compliance with the law (SDCL 47–9A–18).

"family farm corporation"[2] or an "authorized farm corporation"[3] or unless it falls into other specific categories exempted under the Act.[4]

The trial court implicitly relied upon the comma following "no foreign corporation" in the text. Because of this comma, (as the Attorney General concedes) the syntax does literally appear to bar *any* foreign corporation from owning farmland.

As the Attorney General contends, however, the comma is not conclusive. The South Dakota Code, in its chapter on Construction and Effect of Statutes, provides:

> SDCL 2–14–8. Punctuation not controlling. Punctuation shall not control or affect the construction of any provision *when any construction based on such punctuation would not conform to the spirit and purpose of such provision.* (Emphasis added).

*See also* 2A *Sutherland Statutes and Statutory Construction*, § 47.15 (Sands 4th Ed.1984); *State v. Aspinall*, 6 Conn. App. 546, 506 A.2d 1063, 1067 (1986) ("A misplaced or superfluous comma should never be interpreted in a manner that would thwart and frustrate the public policy expressed in the statute.").

This Court repeatedly has refused to be bound by the presence or absence of commas in construing the meaning of statutes. *See, e.g., Matter of Change of Bed Category of Tieszen*, 343 N.W.2d 97, 98–99 (S.D. 1984) (statute construed in accordance with expressed legislative purpose, "punctuation notwithstanding"); *Lewis v. Annie Creek Mining Co.*, 74 S.D. 26, 48 N.W.2d 815, 819 (1951) (statute "must be construed without regard to either the presence or absence of a comma"). In a related context, this Court has also stated:

> [I]t is necessary at times to limit or disregard the literal meaning of some words employed in order that manifest legislative intent may be made effective and the revealed spirit of an act may be served.

*Schlim v. Gau*, 80 S.D. 403, 125 N.W.2d 174, 178 (1963).

In sum, as another court states aptly, the statute in question here must be construed "with more than a grammarian's interest." *Aspinall*, 506 A.2d at 1066. The paramount consideration is legislative purpose, not punctuation.

2. The Act exempts "family farm corporations" from its ban on corporate farming (SDCL 47–9A–13). Such corporations are defined by several criteria, which the Secretary reviews. "Family farm corporations" must either meet a 4–point definition ((1) being founded for the purpose of farming, (2) having majority ownership by members of one family, (3) having a stockholder who resides on or actively operates the farm, or who has done so, and (4) having no stock owned by a corporation), or an alternative definition ("a corporation founded for the purpose of farming and the ownership of agricultural land in which a majority of the voting stock is held by resident stockholders who are family farmers and are actively engaged in farming as their primary economic activity"). (*See* SDCL 47–9A–14 (1988).)

3. The Act exempts "authorized farm corporations" from its ban on corporate farming (SDCL 47–9A–13). Such corporations must satisfy four criteria, which the Secretary reviews. Such corporations must (1) have no more than ten shareholders, (2) have no shareholders other than natural persons or estates, (3) have all their shares of one class, and (4) take no more than twenty percent of their gross receipts from rent, royalties, dividends, interest and annuities. (*See* SDCL 47–9A–15.)

4. The Act expressly exempts from its ban on corporate farming the following entities: banks and trust companies (SDCL 47–9A–4); land which was owned or leased before passage of the Act (SDCL 47–9A–5); bona fide encumbrances taken for purposes of security (SDCL 47–9A–6); land acquired in collecting debts or enforcing liens (SDCL 47–9A–7); gifts of land to non-profit corporations (SDCL 47–9A–8); research or experimental farms (SDCL 47–9A–9); land used to raise breeding stock, seed, nursery plants, or sod (SDCL 47–9A–10); land solely used to feed livestock (SDCL 47–9A–11); and land acquired for non-farming uses (SDCL 47–9A–12). Recent amendments to the statute created exemptions for certain greenhouses (SDCL 47–9A–3.1) and poultry operations (SDCL 47–9A–3.2).