#25646-rev & rem-JKK

**2011 S.D. 60**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

v.

CHRISTOPHER JONES,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE STEVEN R. JENSEN
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff
                                        and appellee.


A. JASON RUMPCA of
Peterson, Stuart & Rumpca, PROF LLC
Beresford, South Dakota                    Attorneys for defendant
                                        and appellant.

\* \* \* \*

ARGUED ON MARCH 22, 2011
REASSIGNED JUNE 21, 2011

OPINION FILED **09/21/11**

#25646

KONENKAMP, Justice (on reassignment)

[¶1.]     Defendant was convicted of raping a twenty-three-year-old woman who testified that she was too intoxicated to have consented.  He appeals asserting that although SDCL 22-22-1(4) does not explicitly include a knowledge element, the circuit court erred when it failed to instruct the jury that the State must prove that he knew that the woman's intoxicated condition made her unable to consent.  Because mere silence by the Legislature on whether knowledge is a necessary element of an offense will not always negate a knowledge requirement, especially for crimes with potentially severe punishments, we conclude that the Legislature intended that a rape conviction under SDCL 22-22-1(4) requires proof that the defendant knew or reasonably should have known that the victim's intoxicated condition rendered her incapable of consenting.

**Background**

[¶2.]     Around 8:00 p.m. on October 18, 2008, E.B. and her co-worker and friend, Abby, began celebrating Abby's twenty-first birthday together.  They started at Bill's Bar in Sioux City.  E.B. estimated she consumed eight to ten beers and at least three shots of liquor.  At 1:00 a.m., the women met Abby's boyfriend, Chance, and his friend, Christopher Jones, at another bar.  Although E.B. knew Chance, this was her first time meeting Jones.  The group continued to drink before going to Chance's house.  Chance lived with Brent.  When they arrived at the home, Chance, Jones, Abby, and E.B. got into a hot tub.  E.B. consumed another three or four beers.  Chance and Abby eventually left the hot tub to go to bed.  Jones and E.B. also left the hot tub, but sat on barstools in the kitchen and conversed with Brent,

-1-

who had been awakened from the noise of everyone in the hot tub. Brent later testified to having one beer during the conversation in the kitchen. E.B. had another drink. Brent testified that E.B. "carried on the conversations. She, you know, didn't seem wasted or drunk or anything like that. Wasn't out of the ordinary."

[¶3.] Around 3:30 a.m., E.B. went to sleep on the couch in the living room. Shortly thereafter, Brent left to sleep in his room, and Jones lay down on the ottoman near the couch where E.B. was sleeping. Jones testified that E.B. asked him if he wanted to share her blanket. According to Jones, he agreed and shortly thereafter, the two had consensual sexual intercourse. Chance and Abby testified that they saw Jones and E.B. asleep together on the ottoman early the next morning.

[¶4.] E.B. testified that although she went to sleep on the couch, she woke up on the floor with Jones on top of her, orally and digitally penetrating her. After physically resisting and verbally refusing, E.B. succeeded in getting Jones off of her. Because of the amount of alcohol she drank, E.B. testified she went back to sleep on a nearby chair instead of leaving. E.B. awoke a second time on the couch, with Jones behind her, with her pants and underwear at her knees and Jones penetrating her from behind. E.B. testified she yelled at Jones, pulled her clothes back on, and retreated to the bathroom until Jones left. E.B. went to the hospital the next day and reported the rape. An examination of E.B. and her clothes revealed Jones's sperm. Officers arrested Jones and he was subsequently charged

with two counts of third degree rape in violation of SDCL 22-22-1(4), and two counts of sexual contact in violation of SDCL 22-22-7.1 and SDCL 22-22-7.2.

[¶5.]     In the jury trial, Jones testified in his defense saying, "I don't know if she was intoxicated that night." At some point thereafter, he requested the following jury instruction related to consent:

> Consent is not a defense to the crime of Rape, defined as sexual penetration where the victim is incapable of giving consent because of intoxication, if the victim is unable to exercise reasonable judgment as to the harm involved and *if the Defendant knew that the person was unable to exercise reasonable judgment.*

(Emphasis added.) The court refused Jones's requested instruction, and ultimately gave its own:

> Consent is not a defense to the crime of rape in the third degree where the victim is incapable of giving consent because of intoxication. In determining whether the victim was incapable of giving consent because of intoxication you must consider all the circumstances in determining whether the victim's intoxication rendered her unable to exercise reasonable judgment in the process of forming mental or intellectual decisions and of discerning or comparing all the circumstances present at the time. It is not enough that the victim is intoxicated to some degree, or that the intoxication reduces the victim's sexual inhibitions, in order to establish that the level of the victim's intoxication deprives the victim of the legal capacity to consent to the sexual act.[1]

Jones objected to this instruction and orally requested the addition of the emphasized language:

---

1.   While we review a court's wording and arrangement of jury instructions for an abuse of discretion, "a court has no discretion to give incorrect or misleading instructions, and to do so prejudicially constitutes reversible error." *Kadrmas, Lee and Jackson, Inc. v. Morris*, 2010 S.D. 61, ¶ 5 n.1, 786 N.W.2d 381, 382 n.1 (citation omitted).

> Consent is not a defense to the crime of rape in the third degree where the victim is incapable of giving consent because of intoxication *and the Defendant knew that person was incapable of giving consent because of intoxication. . . .*

(Emphasis added.) In ruling against Jones's request, the court explained:

> Whether the defendant knew or didn't know the person was intoxicated is subjective knowledge, I don't think is relevant or an element to the crime. I think the only issue is whether she was so intoxicated that she wasn't able to give consent and I think I've instructed on that. I think that's a correct instruction of the law, so I'm not going to submit the additional proposed language. . . .

[¶6.]        The jury found Jones guilty of two counts of third degree rape in violation of SDCL 22-22-1(4). The circuit court sentenced him to fifteen years on each count of third degree rape, to be served consecutively, with eight years suspended on each conviction on certain conditions. Jones appeals, asserting that the court erred when it refused his requested jury instruction and when it denied his motion for a judgment of acquittal.[2]

**Analysis and Decision**

[¶7.]        Jones argues that the Legislature did not intend rape by intoxication to be a strict liability offense. He emphasizes that "[t]here is no arbitrary measuring stick for rape by intoxication as there is for sexual intercourse with a minor where an element to the offense is the child's age." The State responds that Jones's knowledge of E.B.'s intoxication is irrelevant because SDCL 22-22-1(4) does not have a knowledge or specific intent requirement. According to the State, as long

---

2.     In view of our ruling on the first issue, we decline to address Jones's second issue.

as it proves E.B. was "incapable of giving consent because of any intoxicating agent," Jones can be convicted under SDCL 22-22-1(4).

[¶8.]    "Statutory interpretation is a question of law subject to de novo review." *State v. Davis,* 1999 S.D. 98, ¶ 7, 598 N.W.2d 535, 537 (citing *City of Sioux Falls v. Ewoldt*, 1997 S.D. 106, ¶ 12, 568 N.W.2d 764, 766). SDCL 22-22-1(4) defines third degree rape as

> an act of sexual penetration accomplished with any person under any of the following circumstances: . . . (4) If the victim is incapable of giving consent because of any intoxicating agent, narcotic, or anesthetic agent or hypnosis[.]

This language places no apparent requirement on the State to prove that the accused knew or reasonably should have known the victim was too intoxicated to consent.

[¶9.]    Certainly, our Legislature has the prerogative to create strict liability crimes. *State v. Mouttet*, 372 N.W.2d 121, 123 (S.D. 1985) (bail jumping); *State v. Nagel,* 279 N.W.2d 911, 915 (S.D. 1979) (securities laws). Therefore, our primary question must be, what did the Legislature intend? Looking to the history of SDCL 22-22-1(4) before 1985, rape by intoxication required that the State prove that the accused or someone in privity with the accused administer the intoxicating or narcotic agent or hypnosis to the victim. *State v. Galati*, 365 N.W.2d 575, 578 (S.D. 1985); *see also* 1985 S.D. Sess. Laws 359 ch. 179. Under that statutory requirement, the defendant in *Galati* argued that he could not be convicted of rape by intoxication because the State failed to prove that he or someone in privity with him administered the intoxicating agent. This Court agreed and reversed Galati's rape conviction. Thereafter, in 1985, the Legislature removed the requirement that

the accused administer the agent in order to be guilty. Whether intentionally or unintentionally, by removing the requirement that the accused administer the incapacitating element, the Legislature also removed the necessity of proving that the accused had knowledge of the victim's incapacitated condition. That SDCL 22-22-1(4) previously required the accused or someone in the accused's privity to administer the agent presupposes that the accused knew or reasonably should have known of the victim's incapacitated state. With this change, did the Legislature intend to make SDCL 22-22-1(4) a strict liability offense, so that in *Galati*, for example, a conviction could have been sustained even if he had not known the victim was under the influence of an intoxicating agent.[3]

[¶10.] In grappling with similar questions, the United States Supreme Court has declared that "offenses that require no *mens rea* generally are disfavored[.]" *Staples v. United States*, 511 U.S. 600, 606, 114 S. Ct. 1793, 1797, 128 L. Ed. 2d 608 (1994). This is because "[t]he existence of a *mens rea* is the rule of, rather than the exception to, the principles of Anglo-American criminal jurisprudence." *Id.* at 605, 114 S. Ct. at 1797 (citation omitted). Consequently, "some indication of congressional intent, express or implied, is required to dispense with *mens rea* as an element of a crime." *Id.* at 606, 114 S. Ct. at 1797. And "silence on this point by itself does not necessarily suggest that Congress intended to dispense with a

---

3. SDCL 22-22-1(4) lists hypnosis along with chemical agents (victim incapable of giving consent because of "any intoxicating, narcotic, or anesthetic agent [or] hypnosis"). Just as in the case of intoxication, under a literal interpretation of this statute, by proof that the victim was hypnotized, it would be no defense that the accused was unaware of this hypnotic state and even reasonably and in good faith believed to the contrary.

conventional *mens rea* element, which would require that the defendant know the facts that make his conduct illegal." *Id.* at 605, 114 S. Ct. at 1797 (citation omitted).

[¶11.] Indeed, the Supreme Court has "avoided construing criminal statutes to impose a rigorous form of strict liability." *See Id.* at 607 n.3, 114 S. Ct. at 1798 n.3 (citing *United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563-64, 91 S. Ct. 1697, 1700-01, 29 L. Ed. 2d 178 (1971)). We have done likewise in similar circumstances. In several cases, after considering our entire statutory scheme, we have read "knowledge" into statutes, concluding that the Legislature did not intend to punish innocent conduct.[4] *State v. Stone*, 467 N.W.2d 905, 906 (S.D. 1991); *State v. Barr,* 90 S.D. 9, 15, 237 N.W.2d 888, 890-91 (1976). "Whether criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined by the language of the act in connection with its manifest purpose and design." *Nagel*, 279 N.W.2d at 915.

---

4. One treatise lists various considerations courts have used when discerning legislative intent to impose liability without fault. These include: (1) legislative history; (2) other statutes providing guidance; (3) severity of the punishment provided for the crime ("other things being equal, the greater the possible punishment, the more likely some fault is required; and, conversely, the lighter the possible punishment, the more likely the legislature meant to impose liability without fault"); (4) seriousness of harm to the public which may follow from the forbidden conduct; (5) accused's opportunity to ascertain the true facts (whether legislation really meant to impose liability on one who was without fault because he lacked knowledge of these facts –"harder to find out the truth, the more likely the legislature meant to require fault in not knowing; the easier to ascertain the truth, the more likely failure to know is no excuse"; (6) difficulty prosecuting officials would have in proving a mental state for this type of crime; and (7) number of prosecutions to be expected. Wayne R. LaFave, 1 Substantive Criminal Law *Strict Liability* § 5.5 (2d ed.).

[¶12.]       We have often declared that "[w]hen the language of a statute is clear, certain, and unambiguous, there is no occasion for construction, and this Court's only function is to declare the meaning as clearly expressed in the statute." *State v. Schnaidt*, 410 N.W.2d 539, 541 (S.D. 1987) (citation omitted); *see also Davis*, 1999 S.D. 98, ¶ 7, 598 N.W.2d at 537.  Yet we have always reserved a caveat: we will not read statutes literally, if they lead to an "absurd or unreasonable result[.]" *State v. Wilson*, 2004 S.D. 33, ¶ 9, 678 N.W.2d 176, 180; *Davis,* 1999 S.D. 98, ¶ 7, 598 N.W.2d at 537.  Considering the seriousness of this offense, today we look beyond plain language to discern the "purpose and design" of SDCL 22-22-1(4).  Third degree rape under SDCL 22-22-1(4) is a crime against the person and carries a maximum penalty of twenty-five years in the penitentiary and a fifty-thousand dollar fine.  SDCL 22-6-1(5).  With a punishment this severe, strict liability is ordinarily not inferred.  *See People v. Nasir*, 662 N.W.2d 29, 33 (Mich. Ct. App. 2003).  Furthermore, along with the severity of the punishment is the potential that interpreting the statute as not including mens rea would lead to the criminalization of "a broad range of apparently innocent conduct." *Liparota v. United States*, 471 U.S. 419, 426, 105 S. Ct. 2084, 2088, 85 L. Ed. 2d 434 (1985).  South Dakota no longer criminalizes sexual relations between consenting adults, having long repealed the crimes of adultery and fornication.

[¶13.]       If we read SDCL 22-22-1(4) literally, we mark South Dakota as the only jurisdiction to hold that even when a man accused of rape convinces a jury that he reasonably and in good faith believed he had engaged in consensual adult sex, the jury must disregard his innocent state of mind if the woman he had sex with

later establishes that she drank too much to have given her consent. *See, e.g.*, Cal. Penal Code 261 (2009); Minn. Stat. 609.345 (2009); Neb. Rev. Stat. 28-319 (2006); N.D. Cent. Code 12.1-20-03 (2009).[5] That is exactly what occurred here. In closing argument, armed with the court's instructions, the prosecutor was able to tell the jurors that "even if you believe him," when Jones testified that he thought she had consented, "it doesn't matter because consent is not a defense in this case."

[¶14.] In typical "statutory rape" cases, nonconsent is conclusively presumed because of age or physical or mental incapacity. But in cases of underage youth, unconsciousness, or mental deficiency, these conditions are readily apparent or reasonably discoverable, justifying strict liability for those who take advantage of such incapacities. For rape by intoxication, however, where is the line drawn between conscious intoxication and incapacitating intoxication? In this case, the State relied on an expert witness to help the jury understand how intoxicated the victim was. Yet the very fact that the State needed an expert makes the idea of strict liability for this offense even more problematic.

[¶15.] Because rape by intoxication is a serious felony and the Legislature has not indicated its clear intent to dispense with mens rea, SDCL 22-22-1(4) must be read to include a knowledge element. The case is reversed and remanded for a new trial. The circuit court will instruct the jury that the State must prove the

---

5. The language concerning the accused's knowledge in these state statutes is strikingly similar. California: "known or reasonably should be known to the person committing the act," Cal. Penal Code 261; Minnesota: "the actor knows or has reason to know," Minn. Stat. 609.345; Nebraska: "knew or should have known," Neb. Rev. Stat. 28-319; North Dakota: "person knows or has reasonable cause to believe," N.D. Cent. Code 12.1-20-03.

defendant knew or reasonably should have known that the complainant's intoxicated condition rendered her incapable of consenting.

[¶16.]    Reversed and remanded.

[¶17.]    SEVERSON, Justice, and MEIERHENRY, Retired Justice, concur.

[¶18.]    GILBERTSON, Chief Justice, and ZINTER, Justice dissent.

[¶19.]    WILBUR, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.


GILBERTSON, Chief Justice (dissenting).

[¶20.]    I respectfully dissent. I would affirm because the substantial case law and legislative history interpreting SDCL 22-22-1(4) demonstrates that the Legislature made it a crime to sexually penetrate a victim objectively incapable of giving consent as a result of intoxication regardless of whether a defendant subjectively knew a victim was too intoxicated to consent. By adding this requirement, the Court ignores statutory history and effectively overrules case law analyzing SDCL 22-22-1. By requiring the State to prove that a "defendant knew or reasonably should have known that the complainant's intoxicated condition rendered her incapable of consenting,"[6] the Court imposes its own opinion over that

---

6.    Here I note that the majority opinion remands the case with the instruction that "the State must prove the defendant knew *or reasonably should have known* that the complainant's intoxicated condition rendered her incapable of consenting." Majority Opinion ¶ 15 (emphasis added). This goes beyond Jones's proposed instruction that only he subjectively need know the victim was incapable of consenting.

of the Legislature. I would hold that Jones's proposed jury instruction was not a correct statement of the law and the circuit court did not err in refusing to give it.

[¶21.] In addressing the issue of a defendant's knowledge of a victim's intoxication, the circuit court stated that:

> Whether the defendant knew or didn't know the person was intoxicated is subjective knowledge, I don't think is relevant or an element to the crime. I think the only issue is whether she was so intoxicated that she wasn't able to give consent and I think I've instructed on that. I think that's a correct instruction of the law, so I'm not going to submit the additional proposed language . . . .

The Court holds that the circuit court's conclusion was incorrect. Majority Opinion ¶ 1.

[¶22.] Before 1985, SDCL 22-22-1(3) read:

> Rape is an act of sexual penetration accomplished with any person other than the actor's spouse . . . [w]here the victim is incapable of giving consent because of any intoxicating, narcotic or anesthetic agent, or because of hypnosis, administered by or with the privity of the accused[.]

SDCL 22-22-1(3) (1984) (amended in 1985). In 1985, the Legislature amended former SDCL 22-22-1(3) by deleting the phrase "administered by or with the privity of the accused." 1985 S.D. Sess. Laws 359, ch. 179. The majority opinion questions whether the Legislature intended to remove a mens rea requirement when it amended the statute. Majority Opinion ¶ 9. Ultimately the majority opinion concludes that because "rape by intoxication is a serious felony and the Legislature has not indicated its clear intent to dispense with mens rea, SDCL 22-22-1(4) must be read to include a knowledge element." Majority Opinion ¶ 15. I disagree.

[¶23.]     This Court has consistently stated that "when an amendment is passed, it is presumed the [L]egislature intended to change existing law." *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 19, 709 N.W.2d 824, 832 (quoting *S.D. Subsequent Injury Fund v. Federated Mut. Ins., Inc.*, 2000 S.D. 11, ¶ 18, 605 N.W.2d 166, 170). It is also presumed that the Legislature "intended to alter the meaning of the statute to comport with the new terms." *Id.* (quoting *Delano v. Petteys*, 520 N.W.2d 606, 609 (S.D. 1994)). In comparing the previous version of SDCL 22-22-1(4), then found at SDCL 22-22-1(3), and the current amended version, I would conclude the intent of the Legislature was simply to no longer require that the accused, or someone in privity, administer the intoxicating agent. To infer that the Legislature meant to leave the mens rea requirement is to make an unsupported, policy assumption. Courts are in no position to contemplate policy considerations suggestive of different legislative intent when the Legislature has often amended the statute at issue but left a court's interpretation of the statute untouched. *See, e.g.*, *Microsoft Corp. v. i4i Ltd. P'ship*, --- U.S. ---, 131 S. Ct. 2238, 2252, 180 L. Ed. 2d 131 (2011). Even if this Court were to look to language that has been removed from a statute by amendment, there is no indication that the language "administered by or with the privity of the accused" equates to knowledge by the accused that a victim is intoxicated to the extent that he or she is unable to consent. In other words, to find a knowledge requirement in the current version of the statute, this Court also has to adopt a "knowledge of intoxication" requirement in the former version of the statute.

#25646

[¶24.]        Because it is not appropriate to adopt a knowledge requirement from the former version of the statute, I cannot conclude that such a knowledge requirement is found in the current statute.  The language of SDCL 22-22-1(4) is clear, certain, and unambiguous.  It simply does not require that a person know that a victim is incapable of giving consent because of an intoxicating agent.  "[T]he Court's only function is to declare the meaning of the statute as clearly expressed." *City of Deadwood v. M.R. Gustafson Family Trust*, 2010 S.D. 5, ¶ 8, 777 N.W.2d 628, 632 (quoting *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611).  "A court is not at liberty to read into the statute provisions which the Legislature did not incorporate."  *Id.* ¶ 9 (quoting *In re Adams*, 329 N.W.2d 882, 884 (S.D. 1983)); *see also Allegheny Corp., Inc. v. Richardson, Inc.*, 463 N.W.2d 678, 679 (S.D. 1990) (explaining that this Court "will not enlarge a statute beyond its face where the statutory terms are clear.").

> While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used.  To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

*Jensen v. Turner Cnty. Bd. of Adjustment*, 2007 S.D. 28, ¶ 8, 730 N.W.2d 411, 414 (internal citations omitted).  If SDCL 22-22-1(4) should include a knowledge requirement on the part of a defendant, that is a function for the Legislature.

[¶25.]        Declining to impose a knowledge requirement on SDCL 22-22-1(4) is consistent with our case law interpreting SDCL 22-22-1.  *State v. Schuster*, 502 N.W.2d 565, 568 (S.D. 1993); *State v. Fulks*, 83 S.D. 433, 436-37, 160 N.W.2d 418,

-13-

420 (1968), *overruled on other grounds by State v. Ree*, 331 N.W.2d 557, 560 (S.D. 1983). In *Schuster*, this Court considered whether a perpetrator must know of a victim's incapacity to consent when "the victim is incapable, because of physical or mental incapacity, of giving consent to such act . . . ."[7] *Schuster*, 502 N.W.2d at 568. The 16-year-old victim in *Schuster* only had the mental capacity of an eight- or nine-year-old. *Id.* at 567. We held that "[t]he section of the rape statute pertaining to persons incapable of consent makes no mention of, and thus does not require, knowledge on the part of the perpetrator." *Id.* at 568. Like in *Schuster*, SDCL 22-22-1(4) does not mention, and thus does not require, knowledge on the part of Jones that E.B. was incapable of consenting.

[¶26.] This Court has also considered whether a defendant is required to know if a victim is a minor, and therefore incapable of consenting, in order to be convicted of statutory rape. *Fulks*, 83 S.D. at 436-37, 160 N.W.2d at 420.[8] "[I]n a prosecution for alleged statutory rape a defendant's knowledge of the age of the girl involved is immaterial and his reasonable belief that she is over the age of eighteen years is no defense." *Id.* *See also State v. Vogel*, 315 N.W.2d 324, 326 (S.D. 1982) (recognizing the Legislature's prerogative to create strict liability crimes). Under South Dakota statutes and case law, a defendant is not required to know that a

---

7. *Schuster* addressed SDCL 22-22-1(2) (1990), which has since been amended and is now found at SDCL 22-22-1(3).

8. In *Fulks*, the Court was considering statutory rape defined by SDC 13.2801 as "an act of sexual intercourse accomplished with a female, not the wife of the perpetrator . . . where the female is under the age of eighteen years." Statutory rape is now defined at SDCL 22-22-1(1) as "sexual penetration accomplished . . . if the victim is less than thirteen years of age . . . ."

-14-

victim is a minor and therefore incapable of consenting to sexual intercourse.
Likewise, SDCL 22-22-1(4) does not require that a defendant know a victim is intoxicated and therefore incapable of consenting.

[¶27.]     This legal conclusion is reinforced by the drafting of the statute. SDCL 22-22-1 provides in part:

> Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:
> (1) If the victim is less than thirteen years of age; or
> (2) Through the use of force, coercion, or threats of immediate and great bodily harm against the victim or other persons within the victim's presence, accompanied by apparent power of execution; or
> (3) If the victim is incapable, because of physical or mental incapacity, of giving consent to such act; or
> (4) If the victim is incapable of giving consent because of any intoxicating, narcotic, or anesthetic agent or hypnosis; or
> (5) If the victim is thirteen years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim[.]

The requirement of knowledge on the part of the perpetrator is absent in the subsections dealing with minority in subsections (1) and (5), and lack of mental capacity in subsection (3), just the same as intoxication in subsection (4).

[¶28.]     I agree with the Court that the resolution of this issue is the intent of the Legislature. *Fulks* was decided in 1968. *Schuster* was decided in 1993. Thus, by 1993 it was clear to the Legislature that this Court interpreted two portions of SDCL 22-22-1 as requiring no knowledge requirement. Thereafter, the Legislature amended SDCL 22-22-1 three times, in 1994, 2000, and the criminal code revision in 2005. Clearly the concept of requiring knowledge was well known to the Legislature as it had amended this and other statutes before and only had to look at

-15-

such states as Iowa, Nebraska, and California for examples.[9] Yet the Legislature three times passed up opportunities to join this group of states and add a knowledge requirement to SDCL 22-22-1. This is a clear indication of the intent of our Legislature. It opted for a policy decision that the devastating consequences of rape to a victim are the same and deserve the same protection whether the victim was

---

9. The Court relies on statutes from California, Minnesota, Nebraska, and North Dakota to indicate that South Dakota is "the only jurisdiction to hold that even when a man accused of rape convinces a jury that he reasonably and in good faith believed he had engaged in consensual adult sex, the jury must disregard his innocent state of mind if the woman he had sex with later establishes that she drank too much to have given her consent." Majority Opinion ¶ 13. The Court ignores the fact that the statutes it relies on explicitly require that the defendant knew or should have known the victim was too intoxicated to consent. The South Dakota Legislature chose not to include such a requirement. The following statutes are examples of statutes that explicitly include a knowledge requirement:

Iowa Code § 709.4(3) provides:
> A person commits sexual abuse in the third degree when the person performs a sex act . . . [that] is performed while the other person is under the influence of a controlled substance . . . and . . . the controlled substance . . . prevents the other person from consenting to the act . . . [and t]he person performing the act knows or reasonably should have known that the other person was under the influence of the controlled substance . . . .

Neb. Rev. Stat. § 28-319(1) provides:
> Any person who subjects another to sexual penetration . . . without the consent of the victim, . . . who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault[.]

California Penal Code § 261 provides that:
> Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator . . . where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused.

too intoxicated, too young, or mentally incapacitated to consent or was victimized by any other means set forth in SDCL 22-22-1. It is not this Court's position to change any legitimate policy chosen by the Legislature.

[¶29.] The majority opinion cites to two South Dakota cases where this Court has read a knowledge requirement into a statute – *State v. Stone*, 467 N.W.2d 905 (S.D. 1991) and *State v. Barr*, 90 S.D. 9, 237 N.W.2d 888 (1976). Majority Opinion ¶ 11. In *Stone*, this Court concluded that *Barr* was controlling precedent. *Stone*, 467 N.W.2d at 906. We therefore examine why in *Barr* this Court concluded knowledge was an unwritten element of the offense of unlawful distribution of a controlled substance. This Court stated three reasons. *Barr*, 237 N.W.2d at 890-92. First, courts in other jurisdictions had held that notwithstanding the absence of the word "knowingly" in statutes prohibiting the unlawful possession and sale of drugs and controlled substances, knowledge was an element of the offense. *Id.* at 891. We have not been provided with such authority in this case. Second, we noted in *Barr* that lesser statutory drug offenses contained an element of knowledge, which would essentially require a lesser burden of proof on the State in cases having a higher maximum penalty. *Id.* In this case, we find it more appropriate to compare the rape proscribed in SDCL 22-22-1(4) with other means of rape. In so doing, we note that violation of SDCL 22-22-1(4) carries the same penalty as violation of SDCL 22-22-1(3), which is rape of a person incapable of consenting because of physical or mental incapacity. Finally, in *Barr*, we read knowledge into the drug distribution statute because the State did not contend that knowledge was not an element of the offense. *Id.* at 892. The State has not taken a similar position in this case; instead,

-17-

it argues that the defendant's knowledge is not an element of SDCL 22-22-1(4). I agree and decline to follow the reasoning in this case that we used in *Barr* and *Stone*.

[¶30.]     The majority opinion also cites a case from the United States Supreme Court as support. Majority Opinion ¶ 10 (citing *Staples v. United States*, 511 U.S. 600, 114 S. Ct. 1793, 128 L. Ed. 2d 608 (1994)). *Staples* is distinguishable because it involved violating a statute regulating the registration of statutorily defined firearms, rather than a serious crime committed against the person of a victim. *Staples*, 511 U.S. at 602, 114 S. Ct. at 1795 (requiring that the prosecution prove a defendant knew the weapon he possessed was not properly registered). The Court emphasized that "our holding is a narrow one. As in our prior cases, our reasoning depends upon a commonsense evaluation of the nature of the particular device or substance Congress has subjected to regulation and the expectations that individuals may legitimately have in dealing with regulated items." *Id.* at 619, 114 S. Ct. at 1804. Furthermore, the Court emphasized that "[n]either this Court nor, so far as we are aware, any other has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not." *Id.* at 619-20, 114 S. Ct at 1804. (quoting *Morissette v. United States*, 342 U.S. 246, 260, 72 S. Ct. 240, 248, 96 L. Ed. 288 (1952)). The Supreme Court declined to do so in *Staples*, and I would do the same today. *Id.*

[¶31.]     The Court also relies on case law where we have stated that "[w]hether criminal intent or guilty knowledge is an essential element of a statutory offense is

to be determined by the language of the act in connection with its manifest purpose and design." Majority Opinion ¶ 11 (quoting *State v. Nagel*, 279 N.W.2d 911, 915 (S.D. 1979)). The Court fails to acknowledge that the manifest purpose and design of SDCL 22-22-1, at its most basic level, is to protect rape victims who did not consent. Any other "manifest purpose or design" is based on conjecture of what this Court supposed the Legislature said instead of what it actually said. Furthermore, applying a knowledge requirement to the statute is adding an additional element that the Legislature does not require the State to prove in a prosecution.

[¶32.]     Finally, the Court states that while we interpret our statutes by reading the plain meaning of the words they contain, "we have always reserved a caveat: we will not read statutes literally, if they lead to an 'absurd or unreasonable result.'" Majority Opinion ¶ 12 (citing *State v. Wilson*, 2004 S.D. 33, ¶ 9, 678 N.W.2d 176, 180). I fail to see how the plain meaning of this statute reaches an absurd or unreasonable result. It is not absurd or unreasonable for the Legislature to choose to protect rape victims over their perpetrators. Neither is the result absurd or unreasonable when read in the context of the entire statute and this Court's case law analyzing SDCL 22-22-1.

[¶33.]     In conclusion, this Court has, until today, consistently declined to read additional requirements into a statute and Jones presents no compelling argument for abandoning this principle today. SDCL 22-22-1(4) does not require that a defendant know a victim is intoxicated and therefore unable to consent to sexual intercourse. Consequently, the circuit court did not abuse its discretion in refusing Jones's proposed jury instruction. I would affirm.

[¶34.] The Court declines to address Jones's other argument on appeal that there was not sufficient evidence to convict him. Majority Opinion ¶ 6 n.2. I would affirm on that issue based on the ample evidence presented at trial to sustain his convictions.

ZINTER, Justice (dissenting).

[¶35.] Were we considering this issue on a clean slate without legislative and judicial history, I would join the opinion of the Court. But as Chief Justice Gilbertson explains,[10] there is substantial legislative history and case law involving SDCL 22-22-1. That history and case law demonstrate that the Legislature intended to make it a crime to sexually penetrate a victim objectively incapable[11] of giving consent as a result of intoxication even if the defendant did not have knowledge of the victim's incapacity.

---

10. I join all of Chief Justice Gilbertson's opinion except ¶ 30.

11. The circuit court required the State to prove that the victim was objectively incapable of consenting. The court instructed:

> Consent is not a defense to the crime of rape in the third degree where the victim is incapable of giving consent because of intoxication. In determining whether the victim was incapable of giving consent because of intoxication you must consider all the circumstances in determining whether the victim's intoxication rendered her unable to exercise reasonable judgment in the process of forming mental or intellectual decisions and of discerning or comparing all the circumstances present at the time. It is not enough that the victim is intoxicated to some degree, or that the intoxication reduces the victim's sexual inhibitions, in order to establish that the level of the victim's intoxication deprives the victim of the legal capacity to consent to the sexual act.

-20-

[¶36.] "[I]t is widely understood that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer." *State v. Nagel,* 279 N.W.2d 911, 915 (S.D. 1979). "[T]he definition of the elements of a criminal offense is entrusted to the legislature, particularly . . . crimes [that] are solely creatures of statute." *Staples v. United States*, 511 U.S. 600, 604, 114 S. Ct. 1793, 1796, 128 L. Ed. 2d 608 (1994). "Thus, . . . determining the mental state required for commission of a [statutory] crime requires 'construction of the statute and . . . inference of the intent of [the legislature].'" *Id.* at 605, 114 S. Ct. at 1796-97 (quoting *United States v. Balint*, 258 U.S. 250, 253, 42 S. Ct. 301, 302, 66 L. Ed. 604 (1922)).

[¶37.] In this case, Chief Justice Gilbertson explains how this Court has twice interpreted analogous language in other subsections of SDCL 22-22-1 to not require knowledge of incapacity with respect to denominated classes of individuals with impairments. *See* Chief Justice Gilbertson's dissent ¶¶ 25-26.[12] In both cases this Court concluded that because the Legislature did not include *mens rea* language in the statute, the Legislature did not intend the statute to require knowledge of the victim's incapacity. *See id.* The legislative decision was driven by the fact that the victims in the designated classes have diminished capacity, thus justifying the need

---

12. The most striking example is *State v. Schuster*, 502 N.W.2d 565, 569 (S.D. 1993). In that case we held that a defendant need not have knowledge that a mentally incapacitated person deemed incapable of giving consent was actually incapable under SDCL 22-22-1(2). SDCL 22-22-1(4) also involves victims with diminished mental capacity. As is explained in ¶ 38, *infra*, there is no basis to distinguish *Schuster*.

-21-

for more protection than for those who can capably make informed decisions regarding consent to sexual penetration.

[¶38.] Today the Court changes its view of the Legislature's intent regarding objectively incapacitated victims. The Court reads a knowledge element into SDCL 22-22-1(4) (victims incapacitated by alcohol) but not subsection (3) (victims incapacitated by other mental impairments). The Court does so because, in its view, in the latter case involving "mental incapacity," the debilitating "condition[] [is] readily apparent or reasonably discoverable." *Supra* ¶ 14. I disagree. Human experience reflects that the degree of impairment resulting from mental disability and alcohol consumption falls along a broad continuum, and the actual state of incapacity is often not readily apparent to the lay observer. Thus, this is the type of case in which "the prohibition or punishment of particular acts, the state may in the maintenance of a public policy provide 'that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.'" *See Balint*, 258 U.S. at 252, 42 S. Ct. at 302 (quoting *Shevlin-Carpenter Co. v. Minnesota*, 218 U.S. 57, 70, 30 S. Ct. 663, 666, 54 L. Ed. 930 (1910)). The majority concludes otherwise, noting that this is a serious felony, *supra* ¶ 15, and that offenses requiring no *mens rea* are generally disfavored, *supra* ¶ 10 (quoting *Staples*, 511 U.S. at 605, 114 S. Ct. at 1797). But the majority overlooks the fact that the Supreme Court has specifically noted "sex offenses, such as rape" are one of the "few exceptions" to the common-law requirement of a culpable state of mind. *Morissette v. United States*, 342 U.S. 246, 251 & n.8, 72 S. Ct. 240, 244 & n.8, 96 L. Ed. 288 (1952).

[¶39.]    Moreover, as Chief Justice Gilbertson chronicles, the Legislature amended SDCL 22-22-1 on three occasions after we twice held that similar language in parallel subsections of the same statute do not include a *mens rea* element. *See* Chief Justice Gilbertson's dissent ¶ 28. One legislative revision was a part of a comprehensive rewrite of the entire criminal code by eminent lawyers and legislators. *See* 2005 S.D. Sess. Laws ch. 120, § 390. Notwithstanding this comprehensive review of our criminal statutes, the Legislature left untouched this Court's prior interpretations that there is no knowledge element in language like that found in SDCL 22-22-1(4). Under such circumstances, courts are in "no position" to consider policy arguments suggestive of different legislative intent because the legislature has, for a substantial period of time, amended the statute at issue but left a court's "interpretation" of the statute "untouched." *Microsoft Corp. v. i4i Ltd. P'ship*, --- U.S. ---, 131 S. Ct. 2238, 2252, 180 L. Ed. 2d 131 (2011).

[¶40.]    In light of SDCL 22-22-1's judicial and legislative history, I am persuaded that the Legislature's continued use of analogous language we have twice interpreted reflects no intent to change our interpretation. The majority's contrary holding is based on its view that the Legislature has not expressed "clear intent to dispense with mens rea." *See supra* ¶ 15. But this incorrectly presupposes that SDCL 22-22-1(4) previously contained a knowledge element. It did not.[13]

---

13. The Court suggests that the legislatively-removed element previously requiring that the accused or his agent *administer* the alcohol "presuppos[ed] that the *accused* knew or reasonably should have known of the victim's *incapacitated state*." *Supra* ¶ 9 (emphasis added). On the contrary, the act of providing another person beverage alcohol does not necessarily reflect how the recipient will process that alcohol and how other external factors will

(continued . . .)

SDCL 22-22-1(4) has never included language requiring "knowledge," the word defined in SDCL 22-1-2(1)(c),[14] to describe the *mens rea* element when a knowledge requirement is intended in any criminal statute found in SDCL Title 22. Therefore, I cannot agree with the Court that the Legislature's decision *not to include* the customarily used and legislatively prescribed language for including a knowledge element in a criminal statute, reflects legislative intent *to include that* knowledge element in SDCL 22-22-1(4).

[¶41.] Today's Court is also mistaken when it states that we will become the only court to hold that a jury "must disregard" the defendant's state of mind (knowledge of incapacity) in cases like Jones's simply because the victim "establishes that she drank too much to have given her consent." *See supra* ¶ 13. Judge Jensen correctly explained that under the wording of the statute, "the question is [an] objective [one:] was [the victim] so intoxicated that she couldn't give

_____

(. . . continued)

ultimately influence the extent of any resulting incapacitation. Thus, the statute's prior administration element did not presuppose that the accused would also actually know of the victim's ultimate resulting degree of incapacitation. The now repealed administration element denoted responsibility for furnishing the alcohol rather than knowledge of the degree of incapacity that actually resulted. For that reason, the now repealed administration element did not presuppose that the accused also knew of the victim's later ability to consent. Moreover, to reach its result, the majority must employ a new rule of statutory construction that the Legislature's *repeal* of one element of a statute reflects legislative intent to *retain* another element that had never been mentioned in the statute. Canons of statutory construction are loose enough without adding a rule that has such a tenuous tie to logic.

14. SDCL 22-1-2(1) defines the various types of *mens rea* necessary for acts to constitute the criminal offenses in SDCL Title 22. "'[K]nowledge, knowingly,' and all derivatives thereof" are specifically defined in SDCL 22-1-2(1)(c).

consent . . . ." He therefore instructed that the jury would have to find that the victim was objectively incapable of giving consent by considering "all the circumstances." *See supra* n.11. This required the jury's consideration of reasonable, good-faith perceptions of all witnesses to the victim's state of intoxication, including that of the defendant. Thus, the jury could not disregard Jones's testimony that he did not know the victim was intoxicated or incapable of consent when he had sex with her. Indeed, Jones raised this point in his testimony, in his examination of his witnesses, in his cross-examination of the State's witnesses, and in his closing argument.

[¶42.] Finally, to affirm the circuit court, "*we* [would not be] mark[ing] South Dakota as the only jurisdiction to hold" that a knowledge element is not included in the offense of rape of a victim who is objectively incapable of consent due to incapacitation by alcohol. *Cf. supra* ¶ 13 (emphasis added). The Court references four other states. But in each of those states the legislature enacted a statute explicitly requiring that the perpetrator know or reasonably should know of the victim's inability to consent. *See supra* n.5 (citing statutes from four other states). Therefore, this is not a matter in which we must issue a holding adopting our view of the wisdom of having a knowledge element in this type of offense. The South Dakota Legislature made that decision when it differentiated SDCL 22-22-1(4) from the statutes adopted in the four states referenced by the majority.

[¶43.] For all of the foregoing reasons, I respectfully dissent. Based on our judicial and legislative history, I would apply the plain language interpretation of

SDCL 22-22-1(4).  And consistent with our two prior cases, I would restate that the

plain language we interpret today contains no knowledge element.